## OLNEY v SCHURR et

Ohio Appeals, 2nd Dist, Madison Co

No 121.   Decided March 27, 1936

Addison & Addison, Columbus, and J. E. Strayer, London, for plaintiffs in error.

C. C. Crabbe, Columbus, Crabbe & Tootle, London, and Frank J. Murray, London, for defendant in error.

## OPINION

By BARNES, PJ.

No interrogatories were submitted to the jury and therefore it is not ascertainable upon which ground, mental incapacity or undue influence, the will was set aside. It therefore follows that we have present a situation whereby the two-issue rule must be considered.

Very able and comprehensive briefs have been filed by counsel representing the re-spective parties. The following claimed errors are presented:

1. Said court erred in overruling the motion of defendant made at the close of plaintiff's testimony, and at the close of all the testimony, to direct a verdict in favor of the defendant.

2. The court erred in the admission of evidence offered by plaintiffs.

3. The court erred in the rejection of evidence offered by defendant.

4. The court erred in giving the special requests of plaintiffs, given before argument.

5. The court erred in its general charge to the jury.

6. The verdict of the jury was contrary to the evidence and the manifest weight thereof, and was not supported by sufficient evidence, and there was no evidence to support the verdict.

7. Said verdict is contrary to law.

In the oral hearing before our court counsel for contestants said that they were not relying on evidence of mental incapacity, but undue influence as their reason for sustaining the verdict. When we came to examine the briefs it was disclosed that many pages were devoted to the claim of mental incapacity, and thereupon counsel were requested to put in writing the substance of their oral statement, so that there might not be any misunderstanding between counsel and the court. This request was not complied with but counsel did make the oral statement to one member of the court that they desired to withdraw the observation made in oral argument and to rely upon the briefs. Each member of the court has been advised as to the present position of counsel.

We have carefully examined the evidence as it might pertain to the question of mental incapacity and are as frank to confess as counsel were to concede in the oral argument that the judgment could not be sustained upon the proof of mental incapacity. If the so-called scintilla rule had not been abolished, we might have some difficulty in concluding that the evidence is insufficient as a matter of law, but would still hold that the judgment was against the manifest weight of the evidence upon the proof made of mental incapacity. We refer to the case of **Hamden Lodge No. 517, I. O. O. F. et v The Ohio Fuel Gas Company, 127 Oh St, second syllabus, page 469:**

"2. The so-called 'scintilla rule,' requiring a trial judge to submit a case to the

jury if there is any evidence, however slight, tending to support each material issue, no longer obtains in Ohio."

Also syllabus three:

"3. Upon motion to direct a verdict the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor. But if upon any essential issue, after giving the evidence such favorable construction, reasonable minds can come to but one conclusion and that conclusion is adverse to such party, the judge should direct a verdict against him."

However, forgetfulness or mental weakness, even though not amounting to mental incapacity to make a will, as that term is legally understood, are still proper to be considered on the question of undue influence. Absolute soundness of mind is not requisite in order to make a will. The Supreme Court of Ohio, in the case of **Niemes v Niemes et, 97 Oh St 145,** syllabus 4, has defined testamentary capacity as follows:

"4. Testamentary capacity exists when the testator has sufficient mind and memory:

First, to understand the nature of the business in which he is engaged;

Second, to comprehend generally the nature and extent of his property;

Third, to hold in his mind the names and identity of those who have natural claims upon his bounty:

Fourth, to be able to appreciate his relation to the members of his family."

Measured in the light of the rule of proof as announced in the Hamden Lodge case, supra, and the definition of testamentary capacity, as set out in the Niemes case, supra, we are constrained to the conclusion, as a matter of law, that the evidence would not be sufficient to set the will aside on the ground of mental incapacity.

Coming now to consider the question of undue influence, the majority of the court arrives at the conclusion that there is no substantive evidence supporting this issue. In arriving at this conclusion we take into consideration all evidence reflecting and bearing upon the type and quality of mind of the decedent, together with his advanced age at the time the paper writing was executed, and in so doing give it the most favorable interpretation looking to the support of the verdict and judgment. This evidence is always competent in order to present the type of individual and quality of mind and all looking to the question of whether or not the individual may be a subject for undue influence. We also look to the question of relationship, acquaintance and association between the deceased and the beneficiary for the purpose of knowing the opportunity to exercise undue influence. We also recognize the rule that undue influence is not easily proven and circumstantial evidence must most generally be relied upon. However, the circumstances of advanced age, forgetfulness, growing infirmity of mind and opportunity to exercise undue influence, either singly or collectively, standing alone, are not sufficient to sustain a claim of undue influence. There must be substantive evidence, although this may arise either from direct testimony or circumstantial evidence.

It is disclosed from the testimony that the wife of the testator preceded him in death by a few years. Bessie Olney was a blood relative of the deceased wife and during her childhood and up to the time of her marriage spent a great deal of time at the Schurr home. She was not related to the testator except by marriage. After her marriage she continued to visit Mr. and Mrs. Schurr at regular intervals, possibly on an average of once a week. At these times she would help in the work of the household. After the death of Mrs. Schurr these weekly visits continued, at which times she would clean up the house, gather up the washing to be sent out and cook and serve the meals. These weekly visits continued so long as Mr. Schurr lived. During his last illness of a few weeks she remained at the house, continuously looking after the care thereof and administering to the wants of Mr. Schurr.

So far as shown the relationship between Mr. Schurr and his brothers, sisters, nieces and nephews was cordial and friendly. The total value of the estate aggregated a few thousand dollars. Mr. Schurr lived in London, Ohio, and Mrs. Olney, after her marriage, in West Jefferson.

The law is universally announced that mere acts of kindness do not constitute undue influence, although they may always be the subject of inquiry as to whether or not they, the apparent acts of kindness, are mere subterfuges to gain confidence whereby the undue influence may be exercised. An improper motive cannot be attributed unless some evidence is presented to show improper motive. Every individual of sound mind and memory and not under restraint has the right to dispose of his property according to his desires. An undue influence is not present unless it is of such a character that it overcomes the wish

of the testator to dispose of his property as he desires. There is not a scintilla of direct evidence in the record supporting the claim of undue influence. Possibly the claim is made that the testimony of some witnesses who narrated what the testator said to them is direct evidence on this issue. The decisions very clearly and positively state that testimony of declarations of the deceased are not substantive evidence of undue influence, and the trial court so charged the jury in his general charge. In support of this rule we refer to Volume 79 A.L.R., page 1449:

"The general rule established by the overwhelming weight of authority is that declarations of the testator not made contemporaneously with the execution of the will, or so near thereto as to constitute a part of the res gestae, are not competent as direct or substantive evidence of the truth of the matters therein stated, when offered on the issue of undue influence inducing the execution of the will. If offered as direct or substantive evidence of an external fact, such as undue influence or fraud, statements of a testator are merely hearsay, and are liable to all the objections to which mere declarations of third parties are subject. There must be proof of other facts and circumstances tending to prove circumvention or fraud in the procurement of the will, in order that declarations of the testator may be considered at all upon the issue of undue influence. And, for the purpose of providing undue influence inducing the execution of a will, the testator's declarations are of themselves without the least force, etc."

The above rule is adopted in its exact language in the case of **VanDemark v Tompkins, 121 Oh St 129, 135, 136, 137.** Also see the following Ohio cases holding to the same rule:

**Malle et v Haynes et, 25 Oh Ap 506, 514-519 (6 Abs 127); Chaney, Exr. v Coulter, 29 O.C.A. 177, 3d syllabus; Doepple v Mellert et, 24 C.C. (N.S.), 409.**

The particular evidence falling under this legal test is the following:

Mrs. Clara Hornbeck stated that on one occasion, when she was talking to the testator about keeping house for him, he replied to her that he would have to see the boss, meaning Mrs. Olney.

Also, Randolph Massie, a tenant in one of testator's homes, said that he talked to the testator about papering in the kitchen and received the reply that he would have to see the boss.

Also, Isa May Carter, a niece of the testator, says that her uncle talked to her about giving her one of his properties, and in this conversation said that Mrs. Olney wanted it all and further commented that she was a hog. At another time, relative to the same subject, the testator retorted that he did not think it was fair to give all to Mrs. Olney.

Along another line we have the testimony of Mrs. Hornbeck, corroborated by her mother, Mrs. Hull, that during the last sickness of Mr. Schurr and just a few days before his death, they were not admitted to see Mr. Schurr by Mrs. Olney. Mrs. Olney's explanation was that on this occasion Mr. Schurr was in an unconscious state and was not in condition to be seen. Giving the incident the strongest inference against Mrs. Olney it nevertheless occurred almost a year and a half after the execution of the will and it necessarily follows that it could not have any bearing on the execution of the instrument.

Miss Isa May Carter, a relative, testifies to some conversation and incidents following the funeral of Mr. Schurr. She says that after returning to the house Mrs. Olney, in the presence of Mrs. Lefevre, made the statement, "I am smart," and that Mrs. Lefevre patted her on the back and replied: "I will say you are smart." Both Mrs. Olney and Mrs. Lefevre deny making or hearing any such conversation, but even if made it requires an unwarranted stretch of imagination to say it had any application to the making of the will by Mr. Schurr. This same witness, Miss Carter, also relates that later, on the same day, Mrs. Olney said she thought she would hang out a shingle and go into the business of taking care of old men. Again this narrative is denied by both Mrs. Olney and Mrs. Lefevre, but if said we fail to see anything improper in it and certainly it could have no bearing on the question of the execution of the will. A further incident on the same day, wherein Mrs. Olney was credited with saying that she and Mrs. Lefevre had been giggling for three days, is denied by Mrs. Olney and Mrs. Lefevre but if made, unexplained and disconnected as it is, it cannot be construed as relating to the execution of the will.

Searching the entire record, looking to the testimony of witness after witness, line after line, we find nothing further that can possibly be claimed to be substantive evidence of undue influence. The rule of evidence is well recognized that in a will contest case, where contestants are urging the issue of mental incapacity, everything

that is done or said by the testator at, before or after, if not too remote, is competent on this issue. On this issue the declarations of the testator would be competent, but under the law are not substantive evidence of undue influence. As heretofore stated, the trial court so understood and properly charged.

If there is any substantive evidence of undue influence, then, it would be proper on the question of the weight of the evidence to consider the fact that the decedent was not in the continuous company of Mrs. Olney, but both before and after the making of the will until the time of his last illness she was only at the home on an average of once a week. Before his last illness the testator went about the town in the business section, visiting with old acquaintances and also visited at the homes of neighbors and friends and at times with his brothers. If he had executed a writing not to his liking, there was an abundance of opportunity to destroy it, since the evidence disclosed that he kept it in his home. There is no testimony of his making any statement to anyone as to the execution of the will, except to a restaurant keeper called by Mrs. Olney as a witness, who says that Mr. Schurr told him he was giving his property to Mrs. Olney.

In view of the conclusion that there is no evidence of undue influence, we are not considering in that determination the evidence that might have a bearing on the issue if we were determining on the question of the weight of the evidence.

Considering the ground of error under the specification of refusing to admit testimony offered by the proponents of the will, we think there was prejudicial error in the rejection of the testimony of Dr. W. M. McShane and Dr. George C. Scheetz. In view of our conclusion that final judgment should be entered this ground of error is immaterial except as the case may be carried to the Supreme Court. The Code provides that a reviewing court shall pass on all grounds of error.

Both Dr. McShane and Dr. Scheetz were attending physicians of the decedent shortly following the execution of the will, and one of them up to the time of his death. Objection to the testimony of the two doctors was interposed on the ground of privileged communication. In the first instance the trial court overruled the objection to the testimony of Dr. McShane, but subsequently, when Dr. Scheetz was called, the objection was sustained and thereafter the court withdrew the testimony of Dr. McShane and directed the jury not to consider the same on the ground of privileged communication.

It appears from the record that both physicians at different times treated Mr. Schurr for physical ailments and at no time for any mental infirmity. As to the testimony of the physicians relative to the nature and character of their treatment of Mr. Schurr, it is very doubtful whether or not such testimony would be competent against objection, but the substance of the inquiry went to the mentality of the testator. In this particular the attending physicians would be in no different position than any other witness, except as their training might enable them to observe mental disturbances quicker than a lay witness. Under this situation the evidence surely would not be privileged.

This exact question was before the Court of Appeals of the First District in the case of **Heiselman v Franks, 48 Oh Ap 536 (18 Abs 553)**. Application to certify was refused December 10, 1934; Ohio Bar Association Report, December 17, 1934, page 507. The opinion was by Judge Ross and was concurred in by Associate Justice Hamilton and also Judge Richards of the Sixth Appellate District. The syllabus reads as follows:

"The testimony of a physician as to a deceased patient's sanity based solely upon his general observation of the patient, does not constitute a privileged communication within the meaning of §11494, GC. The same rule applies to an attorney's testimony as to his deceased client."

Our attention has been directed to the case of **Swetland v Miles, 101 Oh St 501.** This case involved the right of an attorney to testify concerning communications made by the testator to him. Judge Wanamaker, in the opinion, very clearly and forcibly announces the rule that the personal representatives or heirs may not waive the rule. The scope of the rule is also presented in the case of **Ausbenmoore v Holzbach, 89 Oh St 381.** The question was further considered by the Supreme Court in the case of the **Industrial Commission v Belay, 129 Oh St 584.** The case of **Collins v Collins, 110 Oh St 105-132** is also in point.

The greater weight of authority outside of Ohio holds to the view that the personal representatives and heirs of the decedent may waive the privilege and thereby permit physicians to testify relative to the treatment of their patients. Wigmore on Evidence, §2391, page 3361, 1905 edition.

"The personal representative of the deceased may waive the privilege. One who is entrusted with the management of the deceased's property may surely be entrusted to protect the memory and reputation of the deceased insofar as it is liable to injury by the disclosure of his physical condition when alive. It is incongruous to hold that the person who manages the litigation of the deceased's property interests has no power to waive rules of evidence for the purpose of advancing these interests."

See also Olson v Court of Honor, 8 L.R..A. 521, where the rule is discussed at great length.

The Supreme Court, in the case of **Bahl v Bahl et, 90 Oh St 129,** directly announces the right of an attending physician to express an opinion as to the condition of his patient's mind. The second syllabus reads as follows:

"2. It is competent for the physician of a testator to express an opinion as to the actual condition of his patient's mind, founded on his study and observation of the testator while in professional attendance on him at the time and prior to the date of the will, whether he was capable of comprehending the large and complicated business propositions or the distribution of a large estate."

It is a significant fact that in this case no mention is made of the provisions of the statute excluding testimony of a physician on the ground of privileged communication. It also appears that the attending physician had been a witness to a codicil of the will and there are some later authorities holding that where the testator has his attorney act as a witness this will be construed as a waiver. However, the court apparently does not base its conclusion on the question of waiver.

In the instant case it is not necessary to base the determination on the right of waiver by the personal representatives of the testator, but rather we arrive at the conclusion that the court's ruling was prejudicially erroneous on the authority of the case of **Heiselmann v Franks, 48 Oh Ap 536.**

We also think that the trial court was in error in giving the special instruction before argument relative to undue influence. Abstractly, it is a correct statement of the law, but our findings are based entirely upon the theory that there was presented no evidence of undue influence. The same observation might be made relative to the court's general charge to the jury.

We are constrained to the conclusion that the court should have sustained defendant's motion first made at the close of plaintiff's testimony and renewed at the close of all the testimony, to direct a verdict in favor of the defendant.

Coming now to enter the judgment that should have been entered in the court below, plaintiff's petition is dismissed and judgment entered in favor of defendant sustaining the paper writing as the last will and testament of James Schurr, deceased.

BODEY, J, concurs.

## DISSENTING OPINION

By SHERICK, J.

It is with considerable chagrin that I find myself unable to exhibit deference towards my colleagues in the judgment entered, except in respect to the conclusion that proof of the issue of mental capacity was not established by a preponderance of the evidence. The judgment is not sustainable upon that issue.

It is my reluctant purpose to state the reasons within me as to why the judgment of the trial court should not be disturbed. This court disproves thereof upon two grounds: First, in that there is no direct substantive proof of undue influence and, second, because of the rejection of competent testimony offered by the proponent of the will. The latter reason is here first considered.

This court's majority take the view that the trial court's rejection of the testimony of Doctors McShane and Scheetz, who attended the testator after the execution of the will, as to his mental capacity, was prejudicially erroneous. That judgment is founded upon authority of **Bahl v Bahl, 90 Oh St 129.** I do not concur in that the Bahl case is authority for the principal applied. In the report of that case, (Page 139), the fact appears that the physician testifying as to mental condition was an attesting witness to a codicil to the will. In the case at bar neither McShane nor Scheetz were attesting witnesses to the will.

In **Swetland v Miles, 101 Oh St 501,** those supporting the will offered the scrivenor of the will, who was an attorney, for the purpose of relating certain communications made by the testator to him. This evidence was excluded because of the statutory inhibition contained in §11494 GC. Judge Wanamaker, expressing the unanimous conclusion of that court said, after discussing the two exceptions to the rule:

636

"Now it is urged that this court should read into the statute another exception, to-wit, 'that if the client be dead, her personal representatives or heirs should waive the right for her'."

"This squarely involves so-called judge-made amendments to legislative acts that are otherwise clear and unmistakable as to meaning. In reason there is much force in the logic of plaintiff in error as to the relevancy of this testimony; but the statute, which is clear and explicit, expressly says that the attorney shall not testify."

Two later decisions of our Supreme Court are of interest not only for what is said therein, but for the further fact that the Bahl case, supra, is not mentioned. Concerning this right of an attorney testifying it is said in **Collins v Collins, 110 Oh St 105**, at page 132:

"The question was again before the court for consideration in **Knepper v Knepper, 103 Oh St 529, 134 NE 476**, wherein the doctrine of Swetland v Miles was adhered to; but an exception was recognized where the attorney is one of the attesting witnesses, it being held that—

'When a testator procures his attorney as a subscribing witness to his will he by that act expressly consents that the attorney may testify as fully as any other subscribing witness touching the capacity of the testator or any other fact affecting the validity of the will'."

**Sec 11494 GC** places physicians in respect to their patients in the same category with attorneys in respect to their clients as to communications made as being privileged.

In **Ausdenmoore v Holzbach, 89 Oh St 381**, the court defines the word "communication" as it is used in §11494 GC, and holds that it "may be not only by word of mouth, but also by exhibiting the body or any part thereof to the physician for his opinion, examination or diagnosis, and that that sort of communication is quite as clearly within the statute as a communication by word of mouth." Hence it is apparent that a physician's opinion arrived at by observation of his patient is clearly a privileged communication within the statute, concerning which he may not testify unless one or both of the exceptions to the rule are present. The Ausdenmoore case finds approval in the recent case of **Industrial Commission v Belay, 127 Oh St 584**.

Two further thoughts: It appeals to me that the rejected testimony was rightly excluded for the reason that the testator's mental condition when near unto death is of little moment. The real question was what was his mental condition at or near the time of the will's execution. Second, the members of this court are in accord that the issue of mental capacity was not established by a preponderance of the evidence. Such being true, this medical evidence was but further cumulative proof of the negative of that issue. If its exclusion was erroneous it was hardly prejudicial. It is my notion that the trial court did not err in the rejection of this evidence.

It is proven in this case that the testator was an old man afflicted by some of the ills that flesh is heir to; that he was childish; that he was forgetful and at times would get lost in close proximity to his own home, and would frequently not know his intimate friends or knowing them would not speak to them, even when they were present as guests in his own home. These matters being true, the comment appearing in **41 O. Jur., 355, §146**, is appropo:

"No precise quantity of influence can be said to be necessary and sufficient in all cases, as the amount necessarily varies with the circumstances of each case, and especially does it vary accordingly as the strength or weakness of mind of each testator varies, the amount of influence necessary to dominate a mind impaired by age, disease, or dissipation being obviously less that that required to control a strong mind. Thus. soundness and unsoundness of the testator's mind is an important fact to be considered in determining the question of undue influence. It has been said that a person who was of advanced age, with the natural decay following therefrom, would justify a belief that she might be easily influenced in the execution of her will. Therefore, questions of undue influence are to be submitted to the jury with greater readiness when a testator is shown to have been in a state of physical feebleness or mental weakness when the will was executed."

It is true that kindness in and of itself is never a ground upon which to predicate undue influence. But kindness may be purposely self-inflicted upon a potential receiver to the point that it completely monopolizes and dominates the other. The evidence in each particular case must establish or disprove that fact which is one peculiarly within the province of the jury.

It is in evidence that the deceased and his blood relatives were upon the best of terms; that the beneficiary by self appoint-

ment took complete charge of the decedent; that she excluded his relatives and friends from his home, closed the door in their faces and made the members of 'his family feel that they were not wanted; that when she was present she would not permit even his brothers to be alone with him; that three disinterested witnesses say that the deceased spoke of her as the boss and which Mrs. Olney concedes is true; that she exercised management in his affairs and paid bills and was deferred to, although it is maintained by her that Schurr was able to and did look after his own business; that she caused a companion to return his will to the scrivenor when he became ill; that the testator related to one Isa May Carter, who had been a child in his home, that Mrs. Olney was acting the "hog" with respect to his property, trying to get it all, that he did not know what to do; that he wanted to make a will in favor of the girl who had been a child in his home when he had already made a will; that he could not contend with Mrs. Olney; that he desired to have a Mrs. Hornbeck come into his home and care for him; that Mrs. Olney dominated the funeral, engaged an undertaker without consulting his relatives, and after the funeral was full of glee and bragged to her friend that she was smart and had done well and that she had better hang out a shingle and make it a business of taking care of old men.

If the contestants' version of this evidence was found credible by the jury, then Mrs. Olney's kindness was self-inflicted. Such a conclusion from these facts, to my notion, is not an unreasonable inference.

This court in the recent case of **Helmig, Exr. v Kramer, 48 Oh Ap 71 (76), (17 Abs 41),** Judge Hornbeck speaking, points out that:

"In the very nature of things such a claim as undue influence is not ordinarily susceptible of direct proof. It frequently comes from the circumstances and is based upon proper inferences."

I cannot agree with my associates in that there is no direct substantive evidence in this record supporting the claim of undue influence. The testimony of Isa May Carter relates certain circumstances as to the recipient's conduct, which if believed by the jury, as they do doubt were as evidenced by the verdict, are proof of an independent fact upon which a very reasonable inference that Mrs. Olney expressed unholy glee upon the accomplishment of the purpose of her prior machinations at an unseemly time and when ordinarily she should have no knowledge of the will's contents.

It is reasoned that the testator's declaration are not substantive upon the issue of undue influence. I have no quarrel with the rule stated in 79 A.L.R. 1449, or **Van Demark v Tompkins, 121 Oh St 129,** but would suggest that such were admissible and competent upon the issue of mental capacity. The proponents of the will did not attempt to limit their application to the issue of mental capacity. It has always been my understanding that proof of an issue may be made by evidence, relevant to the issue, but which may be incompetent in character, such as hearsay evidence, if the same is not objected to or otherwise excluded by the trial court. This court is not importuned to assist the plaintiff in error in the trial of her case. That is to take out of the mind of the jurors that which was permitted to go to them in proof of the issues presented without limitation. I do not understand it to be a court's duty to aid one litigant at the expense of his adversary. The declarations of the testator, with respect to the issue of undue influence were purely hearsay, unobjected to or limited in their application and are substantive proof of the issues made. May I further point out that no motion was made to expunge this testimony from the record, or motion made for independent judgment upon the issue of mental capacity. The motion for an instructed verdict was general and not specific.

The author on **Wills, 41 O. Jur., §353,** states the Ohio rule on the inadmissibility of the testator's declarations as substantive proof of the fact of undue influence. He, however, concludes with this statement:

"But where no request is made of the court to limit the purpose for which such evidence is admitted, its admission is not prejudicial error."

This is the holding in **Swin v Knepper, 1 Abs 703.** It is but recognition of the well-established rule that in competent but relevant evidence, if unobjected to, is substantive proof of the issues made.

To my notion the verdict and the judgment entered thereon may only be attacked upon the theory that such is against the manifest weight of the evidence. It is my conclusion that that attack has been unsuccessful and the judgment should have, therefore, been affirmed.