**HELMIG, Exr, et v KRAMER et**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1209. Decided March 8, 1934

John Dale, Dayton, and A. K. Meck, Dayton, for plaintiffs in error.

Andrew S. Iddings, Dayton, and Harry P. Jeffrey, Columbus, for defendants in error.

## OPINION

By HORNBECK, PJ.

The assignments of error set forth in the brief of defendants are numerous and are found under the following headings of error:

(1)  Admission of hearsay testimony.

(2)  Admission of hearsay opinions.

(3)  Refusal to allow defendants to fully cross-examine medical expert.

(4)  Limiting the effect or scope of certain testimony.

(5)  Refusal to give special instructions before argument requested by defendants.

(6)  Error in general charge.

(7)  Error in refusal to set aside the verdict.

To consider and comment upon the claimed errors specifically would serve no useful purpose and would extend this opinion beyond all proper limitations. We have, however, very carefully read the transcript of the testimony in its entirety, examined the charge of the court and studied the briefs of counsel.

Briefly, the facts necessary to an understanding of the question presented are that Elizabeth Helmig died at the age of seventy-five years, one month, 24 days, of senile dementia. The date of her death was December 21, 1930. At the time of her death she was living with her brother, George Helmig and his wife, Caroline Helmig, at their home, to which she had moved in June, 1930. Prior to June, 1930, she had, for several years, lived with George Latin, a brother-in-law, who died in June, 1930. George Latin's wife died several years prior to her husband's death. Mrs. Helmig in early life for many years was employed at the Dayton State Hospital for the Insane. She had attained considerable competence.

Some eight or ten witnesses testified touching the mental instability of testatrix and for the defense several witnesses gave evidence to the effect that testatrix was of sound and disposing mind and memory at and about the time of the execution of her will.

Some of the unusual actions of testatrix which were stated by the witnesses for the plaintiffs to have occurred within a time proximate to the date of execution of the will under consideration were: that she was very forgetful; that, although in her early life she was tidy and careful about her personal appearance, in her later years she was unkempt; that she was not a careful housekeeper; that others had to assist her to dress and comb her hair; that she was unsteady in her walk and at times would fall; that she would turn on the gas and not light it; that she would propose to guests to serve coffee, put the coffee pot on the stove but place no fire under it; that after she had moved to the home of George Helmig she did not know the location of her room or other rooms in his home; that while at the home of George Latin she thought the State Hospital was immediately across the street, although it was a mile away; that she told others that the railroad was coming down Hickory Street where she lived; that she had auditory delusions to the effect that individuals who were across the seas had visited her and talked with her; that she had delusions and hallucinations; on occasions stated that she had an apron full of mice; during the night would get out of bed, go downstairs and take up the work which is ordinarily done in the daytime; that a man followed her home and into the house and when gone she missed a little figure of a sheep, which upon search was found on a mantle; that on one occasion she got under her bed during the night season and George Latin had to go into her room and take her from under the bed and before he got out from her room she had closed the door on his arm thinking he was an intruder; that on one occasion employees had cleaned out a closet for testatrix, taken old articles therefrom and removed them to a stable and that afternoon or next day she brought them all back into the closet; that she would take good meat and mix it with bones which were refuse, place them together and put them in the refrigerator; that she would put perishable food in the stove; that on the occasion of the death of George Latin, at the funeral parlors, she reached up to what she took to be the mantel at her own home for holy water; that she was unable to carry on conversation.

The testimony respecting her strength of mind came from neighbors and acquaintances who said that she seemed to be able

to discuss intelligently events of the present, as well as the past, and that they observed nothing unusual in her manner.

Dr. Ryan was the attending physician of George Latin during his last illness and though he did not give any specific treatment to Elizabeth Helmig he did observe, generally, her condition and stated that she suffered from senile dementia. Dr. A. F. Shepherd was called as an expert for the plaintiffs and Dr. C. N. Chrisman in like capacity for defendants. Dr. Shepherd, upon the record, would seem to be as well qualified to testify respecting mental diseases as any doctor who would be available in Ohio. His training and experience are unusual. His opportunity to observe patients suffering from mental disturbances was most extensive and the number with which he has come in direct contact extended into the thousands. His testimony is logical, cogent and convincing. It is free from extravagant or inordinate statements. Upon questions presented to him, wherein were set forth hypotheses taken from the statements of witnesses for the plaintiffs, he answered that on the date of the execution of the will under consideration and for some time prior thereto, the testatrix was suffering not only from senile dementia but from senile insanity as well; that at the time of the execution of the will testatrix did not have mental capacity sufficient to enable her to understand the nature of the business in which she was engaged; to comprehend generally the nature and extent of her property; to hold in her mind the names and identity of those who had natural claims upon her bounty; nor to appreciate her relationship to the members of her family. Dr. Chrisman, though admittedly not a specialist in mental diseases, was of opinion that, although testatrix was undoubtedly incapable of understanding the nature and effect of a will when suffering from delusions or hallucinations, yet at other times, when free from such disturbances, she would be sound mentally and have those capabilities essential to the execution of a will. We set this testimony out at considerable length because it is convincing that we could not say that the verdict is manifestly against the weight of the evidence.

On the question of undue influence we will not attempt to set forth in detail the facts in the record tending to establish this claim. Suffice to say that, in our judgment, though slight there was sufficient evidence to require the court to present this question to the jury.

In the very nature of things such a claim as undue influence is not ordinarily susceptible of direct proof. It frequently comes from the circumstances and is based upon proper inferences. We do not hesitate to say that the strength of the plaintiff's case supporting the claim of undue influence is much weaker than the claim of mental incapacity. If it were vital to proper determination of this proceeding to hold that proof of undue influence was established by the requisite degree of evidence, we would have a difficult question. However, the two-issue rule applies, **Niemes v Niemes et, 97 Oh St, 149,** and if the case was properly presented upon the claim of mental incapacity and the verdict of the jury on this issue can be supported on the evidence, then, although there may be doubt as to the correctness of the verdict if tested upon the claim of undue influence, we could sustain it. In other words, the jury could have found for the plaintiffs upon either or both charges of the petition and as no interrogatories were submitted and answered, we must test the verdict upon any theory upon which it may be supported.

It is claimed that the court erred in permitting witnesses to testify as to what George Latin had said to them respecting things done and statements made by testatrix, tending to show mental incapacity and also permitting these witnesses to state the opinion which George Latin expressed respecting the condition of her mind.

Witnesses were permitted to state what George Latin had told them concerning peculiar acts of testatrix and his opinion of her mental condition. In support of the right of plaintiffs to this testimony we are cited to **17 O. Jur., §260,** which, insofar as pertinent reads: :

"Statements of a deceased third party who had no connection whatever, so far as privity is concerned, with either of the parties to a proceeding, may be admitted in two cases: First, * * *; and Second, when made by one having peculiar means of knowing the matter stated, who had therein no pecuniary interest to misrepresent, or in opposition to his pecuniary or proprietary interest."

The statement of the rule is unfortunate in that it seems to authorize the reception of evidence of statements of a deceased person who had no connection whatever, so far as privity is concerned, with either of the parties to a proceeding if the deceased declarant had peculiar means of knowing the matter stated and **had therein no pecuniary interest to misrepresent.** It is

not sufficient to say that the declarant had no pecuniary interest to misrepresent. The statement must have been adverse to his interests and most of the authorities hold strictly to the rule that the statement must have been adverse to a pecuniary or proprietary interest.

The authority cited to support the text is **Re: Rahe, 12 O.D. (N.P.), 590.** Here we find a correct statement of the exceptions to the hearsay rule in the 4th proposition of the syllabus:

"A statement of a deceased person is admissible when it was made by him in the ordinary course of business or of professional duty, about the time when the matter occurred and of the witness' own knowledge, and again, a statement of a deceased person is admissible, if he had no interest to misrepresent it **and if it was opposed to his pecuniary interest;** and such statements are admissible in suits where there is no privity between the deceased and the parties to the suit."

This is the only case cited to support the quoted statement in the text. However, **Bird v Hueston, 10 Oh St, 418,** is later cited in the section and was referred to by the trial court in the opinion on the motion for new trial. The controverted question in this case related to another branch of the exception to the rule but the court, early in its opinion, through Gholson, J., stressed the element to which we have adverted. At page 428:

"These declarations were received as those of a person since deceased, · and against his interest at the time they were made. The ground upon which such evidence is received, it has been said, 'is the extreme improbability of its falsehood. * * ·'" 1 Greenl. Ev. §148.

"It might be inferred from this statement, that the fact must have become known, the information acquired, or the knowledge obtained, when the party had such an interest as would induce accuracy and care in ascertaining the truth. If this be required, the declarations should not have been received in this case, for the party who made the declarations, though then interested, had no pecuniary interest (which authorities show to be indispensable) at the time the matters occurred to which the declarations related."

Other cases cited in the opinion overruling the motion for new trial, which we have considered are **State v Campbell, 11 N.P.**

(N.S.) 673; **Second National Bank v́ New First National Bank, 7 Oh Ap, 68.** ·.

The ·opinion in State v Campbell was written by Judge Washburn, then on the Common Pleas bench of Medina County, now on the Appellate Bench of the 9th District, and in the first branch of the syllabus one of the prerequisites to the application of the exception under consideration there stated is:

"(b) The declaration must have been against the pecuniary interest of the declarant at the time it was made."

And in the third syllabus it is said:
"This species of evidence stands on the extreme limit of competent testimony, and is not highly favored by the courts, and the tendency is rather to restrict than enlarge the right to receive it; and unless such evidence comes clearly within all the conditions requisite for its reception under the rule, the better authority requires the rejection of such evidence."

In Bank v Bank, supra, the requisite which we are considering essential to the application of the exception is stated in somewhat different language, namely, that the declaration is at variance with the interest of the declarant.

There seems to be no variance in the pronouncements of the authorities respecting the requisites of the exception to the rule and it seems that counsel recognizes them as we have stated them.

However, it is asserted that Mr. Latin's statements at the time when made were against his pecuniary interest, his pecuniary interest being represented by the fact that he was then a beneficiary in the sum of $500.00 by the terms of the will of Mrs. Helmig of 1929. We do not believe that this possibility of receiving $500.00 under the will is the "pecuniary interest'" contemplated. The fact that Mrs. Helmig was acting in a peculiar manner indicating mental instability and that the statements were made by Mr. Latin would not invalidate a will made prior thereto and affect a provision therein favorable to Mr. Latin. A will is ambulatory and speaks only from the death of the testator. So long as there is a possibility of destroying or revoking the will and so long as the testator lives no rights can vest. It is as reasonable to assert that Mr. Latin in making his statements was acting in his own interest as that he was speaking adversely to his interest because they tended to establish plaintiff's inability to make another will

and to that extent increased the possibility that her will of 1929 would become effective. These observations only strengthen the conclusion that Mr. Latin's interest in Mrs. Helmig's will of 1929 was not the "pecuniary or proprietary interest" mentioned in the statement of the exception to the hearsay rule. The pecuniary interest which the declarant must have relates to the subject matter of his declarations.

At the time that George Latin made the declarations which are offered in testimony in this case he had no pecuniary or proprietary interest which would bring his statements within an exception to the hearsay rule.

We have discussed the question of the admissibility of the evidence of statements of George Latin at greater length than would of necessity be required. In our judgment the exception to the hearsay rule which we have considered can have no application to testimony relating to testamentary incapacity in a will contest case.

Objection is made to the refusal of the court to permit cross examination of Dr. Shepherd by hypothetical questions based upon evidence which was not yet in the record. The court could properly have permitted this testimony upon the assurance of counsel that the evidence thereafter to be offered would support the statements of fact contained in the question. However, it was discretionary, and if counsel for defendants wanted to preserve the question upon the whole record he should have recalled Dr. Shepherd after having offered the testimony upon which the hypothetical question was based. We are satisfied that there was no error in this ruling of the trial court upon the whole record.

We have examined the special instructions requested by counsel for defendants to be given before argument and refused by the trial court. Without discussing them separately we are of opinion that the court was correct in refusing to give the instructions as framed except No. 2.

Special instruction No. 2 requested by defendant before argument was as follows:

"In connection with the other evidence you have the right in determining the testamentary capacity of the testatrix to consider any evidence tending to show that the will was just or unjust; reasonable or unreasonable; natural or unnatural and the value and nature of the testatrix estate. Such matters do not of themselves establish either testamentary capacity or testamentary incapacity but only have weight according to circumstances and in connec-

tion with the other evidence relative to the controversy."

We believe that this instruction could safely have been given. The objection upon which it was refused, according to the record, is that the language employed required the jury to give some weight to the testimony which was the subject matter of the special charge.

We do not believe that this objection is sufficient to require the court to refuse the charge. If the evidence to which the special charge relates was relevant and competent, then, of course, the jury would be required to give it consideration, which is equivalent to requiring the jury to weigh it. The law of the instruction is supported by the text in Alexander's Commentaries of Wills, Vol. 1, 482, and many cases there cited.

Nos. 7 and 8 are incomplete because they incorporate one only of the mental characteristics of testatrix upon which plaintiffs relied to establish her lack of testamentary capacity.

Although possibly we would not reverse because the general charge included in a statement of requisites necessary to mental capacity to make a will, one which is not included in the Niemes case but as the case must again be tried, we would suggest that safe procedure would require that the Niemes case be followed to the letter.

An examination of the general charge of the court discloses that, inadvertently, no doubt, the trial judge failed to instruct the jury properly as to the burden of proof. It is essential that in a will contest case, the court instruct the jury that the evidence introduced by the contestant outweigh both the evidence adduced by the defendants and the presumption arising from the order of probate admitting the will to probate. **Steinle v Kester et, 46 Oh Ap, 245, (13 Abs 497); Hall, etc. v Hall, 78 Oh St, 415; West v Lucas, 106 Oh St, 255; Kennedy, Exr. v Walcutt, 118 Oh St, 443.**

Inasmuch as the testimony respecting declarations of George Latin was improperly accepted in conjunction with the failure to charge properly as to the burden of proof, we are required to reverse this cause and remand it for a new trial. If the cause had been properly presented to the jury we would not hesitate to say that the verdict and judgment are sustained by the weight of the evidence. Judgment reversed and cause remanded.

BARNES, J, concurs.
KUNKLE, J, not participating.

## ON APPLICATION FOR REHEARING

Decided March 28, 1934

By THE COURT

Submitted on application of defendants in error for rehearing. The application consists of three headings which we consider in order.

It is claimed that this court was in error in holding that the general charge to the jury did not sufficiently state the extent to which the plaintiff below bore the burden of proof. Extensive reference is made to the bill of exceptions. This ground of error was not urged by the petition in error nor by counsel for plaintiffs in error in their briefs but inasmuch as the case was to be tried again we thought it advisable to call attention to the particular wherein we felt the charge upon re-trial could be strengthened.

The second heading of the application is as follows:

"Because, if the general charge was, as we submit, correct, the other ground of reversal, namely, because of the violation of the Hearsay Rule in the admission of testimony, is no ground for reversal, the case being a two-issue case to which this court has said at page six of its recent decision: 'The two-issue rule applies, * * *' and the hearsay testimony excepted to applies to but one of those two issues, namely: the question of testamentary capacity, and not to the other of the two issues: that of undue influence, which we submit is amply sustained by competent evidence."

The testimony which was declared to be incompetent reached not only the issue as to testamentary capacity but also that of undue influence. It is always pertinent to a charge of undue influence in a will case to show the mental instability of a testator as it may affect his susceptibility to undue influence.

The third heading is:

"Because but two of the three judges of this Honorable Court decided the case, and we submit that we are entitled to the consideration of the full court, and especially in the event of a reversal."

If we had based our reversal upon the weight of the evidence, the argument of counsel would be tenable but as it is based upon other errors of law two members of the court concurring would be sufficient in any event.

We regret that the third member of the court could not participate in our decision but his presence could not have affected the result.

The application for rehearing will be overruled.

HORNBECK, PJ, and BARNES, J, concur.