143 P.2d 572

**ELSEA v. BROOME FURNITURE CO., Inc., et al.**

No. 4761.

Supreme Court of New Mexico.

Oct. 19, 1943.

Rehearing Denied Dec. 20, 1943.

Frank O. Westerfield, of Albuquerque, for appellants.

Rodey, Dickason & Sloan and Frank M. Mims, all of Albuquerque, for appellee.

MABRY, Justice.

Suit was filed by plaintiff-appellee, who may hereinafter be referred to as plaintiff, against defendants-appellants, the employer and insurer, who may hereinafter be referred to as Employer and Insurer respectively, to recover under the Workmen's Compensation Act on account of injuries alleged to have been sustained by plaintiff in three successive accidents.

Plaintiff complains that he suffered successive accidents on February 12, May 2, and June 29, 1940, and that as a result thereof he sustained injuries to his shoulders, arm, head, and other portions of his body, the shoulder and arm injury being permanent, which injury or injuries brought on epileptic seizures from which he suffered and will continue to suffer, and that he was and is thereby permanently disabled; that by reason of mental confusion and lapse from normal mentality he was prevented from exercising diligence in the prosecution of his claim for compensation; and that, in addition, he was delayed in such prosecution by being "misled in whole or in part" through the conduct of the Employer or Insurer, which reasonably led him to believe that compensation to which he was entitled would be paid without formal claim or suit being filed.

Defendants answered denying that the injuries relied upon occurred in the regular course of employment and denied that any of such injuries resulted in disability from any accident arising out of or in the course of plaintiff's employment; denied that plaintiff was compelled to spend any amount for medical services or that he suffered mental confusion or was misled

by either the Employer or the Insurer with reference to any claim for compensation. The defense further interposed is to the effect that no notice was given in writing or otherwise to the defendants or either of them as required by our statute, and urged the bar of the statute against the further prosecution of his claim.

Plaintiff had worked regularly for Employer for several years prior to February, 1940, for a weekly wage of approximately $21.50. The first injury occurred on February 12, 1940, when plaintiff fell while descending into the warehouse basement upon the Employer's premises. In this fall both arms were "strained" and the claimant was "dazed for quite a spell". There was an abrasion on the cheek or jaw, the bruises on his head extended from the ear to about the middle of the head, since which time one of claimant's eyes watered constantly. Immediately after falling he lay in a dazed condition for five to ten minutes, and both arms, more particularly his left one, was wrenched. Following the accident plaintiff lost much of the use of his left arm and was troubled by pain centering in the back of his neck and at times reaching to his head from the left side; that as a result of this particular accident and injury the claimant was treated by the Insurer's doctor, and upon the advice of such doctor returned to work after some eleven days absence. He was treated at this time for bruises and injuries, including, incidentally, some treatment for head injuries. He was advised that his shoulders would have to "work out of" their condition.

The president and manager of the Employer corporation knew of the accident at the time, and he himself sent claimant to the doctor employed by the Insurer Company and claimant, and plaintiff was, by Employer, paid wages for the eleven day period he was first absent. Claimant's arm continued to bother him at various times from the date of the first accident, and, on May 2 following, while assisting another workman of Employer in carrying downstairs a large buffet one end of the buffet, dropped by the fellow workman, caused plaintiff to be thrown against the wall, causing, immediately, a severe pain in the bowels, resulting shortly thereafter in the development of double inguinal herniae.

Plaintiff's original injury of February 12 deprived him of some use of his left arm as a result of which, while carrying the buffet, a somewhat heavy load, he was put in a position of strain as to other parts of his body that would not have occurred had both arms functioned normally. The president and manager of Employer company also knew at the time of this second accident and he was advised immediately of the severe pain in the bottom of plaintiff's bowels, and, likewise, of the herniae resulting shortly thereafter. Claimant, at his own expense, at once secured a truss which he continued to wear since that time; and he continued to work for Employer without a layoff, until June 29, 1940.

Then, on June 29, 1940, while employed at "hard work", and after having worked until 11:00 P. M. the previous day, he was

seized with a sudden attack which "struck him" in the intestines. He straightened up and fell over, striking his head and arms against a work bench, becoming and remaining unconscious for some time. He was later revived by his son, who had been summoned by the manager of the Employer company, and taken home. He performed no labor after the date last above mentioned. According to the medical testimony the seizure of June 29 probably was of the type of grand-mal epilepsy, as distinguished from a typical epileptic seizure as contended for by defendants.

On July 13, 1940, plaintiff was discharged by Employer. He continued to suffer from occasional epileptic seizures from the time of his injury until he secured medical relief. The relief secured was only against seizures and does not constitute a cure. The treatment must be continued indefinitely. There is no particular dispute about the present condition of the claimant and there is no basis for any contention that he is not totally and permanently disabled, if such contention is, in fact, made by defendants. It is clear that claimant is suffering from double inguinal herniae, a severe arthritic condition of the left shoulder, associated with a condition of torn ligaments and what might be a grand-mal epilepsy.

■ The real conflict arises over the cause of claimant's injuries and disabilities, and the nature thereof, and there is a clear conflict of evidence as to this, excepting as it relates to herniae. As to herniae the evidence is substantially uncontradicted that it occurred at the time, and because of the strain imposed, when, on May 2, plaintiff was helping to carry the large buffet downstairs.

The medical witness testifying on his behalf supports plaintiff's contention that his epilepsy was traumatic in origin and was doubtless caused by the head injury suffered on Feb. 12, 1940, although defendants produced clearly conflicting evidence to the effect that the epilepsy could possibly be traced to cerebral arteriosclerosis. There is evidence in the record, however, to the effect that plaintiff showed no indication of arteriosclerosis. He had normal blood pressure.

As to the arthritic condition of the shoulder, plaintiff's medical testimony is categorically to the effect that it was traumatic and caused by the injury of Feb. 12, at the same time of the injury to the body and the face and head. Contrary to the medical testimony on behalf of plaintiff, defendants furnished medical testimony attributing the shoulder condition complained of to chronic arthritis, attaching no weight to the history of the shoulder injury of February 12.

In the month of August, 1940, plaintiff took his first steps to secure workman's compensation. This was at the suggestion of the employer. Plaintiff went to see the Insurer's local agent, who in turn referred him to the Denver office. He was advised by the Denver office of Insurer that the matter was being referred to their Albu-

querque representative "for investigation", and stating that the matter would receive further attention when an investigation was completed. Subsequently plaintiff was called upon by an Albuquerque adjusting firm acting on behalf of Insurer, to whom he gave a statement of his injuries, thereafter going more than once to the Employer's doctor for examination. Plaintiff afterwards returned to the adjusters and gave a further statement, at which time he was advised by one of the adjusters that he had a legitimate claim and stating that it was only a matter of time until it would be paid.

Plaintiff contacted the adjusters from time to time thereafter, and upon each contact he was told by them that they had not been advised of the company's decision whether or not to allow the claim. He was never told the claim would not be paid. Then, on October 15, 1941, he wrote the Denver office of the Company requesting compensation, and within a few days thereafter he was advised through a letter from the company that his claim was not compensable and that it would not assume responsibility for any compensation or medical expense. At no time prior to this date was plaintiff advised by the Insurer, the Employer, or the adjusters, that his claim would not be paid; and he testified that at all times prior to October 27, 1941, the date of the letter disclaiming liability, he believed the claim would be paid, and for that reason had not otherwise persevered in the filing of his claim or securing settlement.

Thereafter and on January 31, 1942, plaintiff wrote the Insurer another letter addressed to the Denver office expressing disappointment and concern over the rejection of his claim, pointing out some of the injuries suffered on June 29, 1940, the loss of time occasioned thereby, and relating the understanding he thought he had with Mr. Cavanaugh, a representative of the company. He stated that he would await another reply, and if some settlement was not made out of court he would secure an attorney and bring suit. The claimant wrote the company again; and thereafter contacted an attorney who later entered the army. Suit was filed on May 27th, 1942.

Appellants, under their assignments of error have propounded nine points in support thereof. These may be summarized as follows:

1. That claimant's claim is barred under 1941 Comp. § 57-915, for failure to give written notice of his accident and injury within thirty days;

2. That claimant's claim is barred under 1941 Comp., § 57-913, for failure to file suit within one year, notwithstanding the provisions of 1941 Comp. § 57-914;

3. That the trial and verdict were unfair to appellants for a variety of reasons, including inadequacy of the evidence to support the verdict;

4. That the trial court ruled erroneously in restricting cross-examination by the appellants;

5. That the trial court erred in permitting questions concerning the claimant's financial condition;

6. That the trial court erred in refusing appellant's motion for new trial;

7. That the trial court erroneously commented on the credibility of witnesses and failed to instruct the jury upon this point in violation of Rule 70—107 of the Rules of Civil Procedure;

8. That the trial court erred in permitting recovery of hospital and operating fees for claimant's herniae;

9. That the amount allowed to claimant's attorney for attorney fees was excessive.

■ Point 1 is without merit. The Employer had notice of all three of the accidents at the time of their occurrence, and this would, under the terms of the statute, avoid the necessity of formal written notice. The requirement of such notice, under circumstances here present, is expressly waived by the statute, 1941 Comp. § 57-913, which provides that it is not necessary "* * * where the employer or any superintendent or foreman or other agent in charge of the work in connection with which such injury occurred had actual knowledge of the occurrence thereof". Employer's president and manager knew of the accident of February 12. It was reported to him immediately and wages were paid plaintiff for a few days first lost from work on account thereof. The same official of the Employer company either witnessed or knew of the second accident, that of May 2, immediately thereafter, and was told of the resulting pains at the time and of the development of herniae shortly thereafter.

■ As to the accident of June 29, it appears from the evidence that everyone present on the Employer's business premises at the time knew of the occurrence, the president of the company himself being present, and he discussed the circumstances of the fall and of the alleged injuries with plaintiff shortly thereafter. Neither plaintiff nor Employer knew, of course, that epilepsy would result some five months after the injury alleged to have occurred February 12. Notice of the result to flow therefrom is excused where the employee had no knowledge of the true seriousness and expert medical attention was necessary to establish causal relation. Hoage v. Employers' Liability Assur. Corp., 62 App.D.C. 77, 64 F.2d 715. The Employer also knew as much as claimant about the occurrence of the second injury, which presumably brought on the herniae, and the knowledge of the Employer of the occurrence on June 29 was, as we have stated, sufficiently full and complete. As to the contention that the Employer had no knowledge of the nature and extent of the injury incurred at the time it is claimed he suffered a head injury, it might be said that there is evidence to support such contention, and also to support the theory that plaintiff did not tell one or more of the doctors of the head injury, at the time. However, all we need

to say here is that this conflict must be resolved in favor of the party enjoying the benefits of the favorable verdict. It is true that a casual statement of injury is not sufficient (Ogletree v. Jones, 44 N.M. 567, 106 P.2d 302), but it is likewise true that the claimant is not required to anticipate the results which will flow when he may not know at the time what the results will be.

In addition to this, we have the submission by plaintiff to numerous physical examinations, laboratory tests and psychiatric inquiries and the giving of at least two written statements to the Employer. The Employer had as much knowledge concerning plaintiff's injuries, the surrounding circumstances and occurrences and the extent of such injuries as could have been reasonably required and as much as could have been conveyed to it at any time pertinent, by any written notice. It is under such circumstances as these that the statute waives the requirement of notice. See Robinson v. Mittry Bros., 43 N.M. 357, 94 P.2d 99; Ogletree v. Jones, supra; 71 C.J. 992, 993, § 770. Upon this question of lack of notice defendants rely upon Taylor v. American Employers' Ins. Co. of Boston, Mass., 35 N.M. 544, 3 P.2d 76; Maestas v. American Metal Co. of New Mexico, 37 N.M. 203, 20 P.2d 924, and Ogletree v. Jones, supra, none of which cases, however, militate against our holding that under the circumstances of this case Employer had actual knowledge and written notice was not required, and the Ogletree Case, supra, in fact

affords support for plaintiff's contention. See 78 A.L.R. 1232, 92 A.L.R. 1036, and 107 A.L.R. 815 for exhaustive annotations and citations upon this question.

Under Point 2 it is urged that the claim is barred under 1941 Comp., § 57-913, for failure to file suit within one year, notwithstanding the provisions of 1941 Comp. § 57-914. The present action was filed on May 27, 1942. The statute relied upon by the defendants in this connection, so far as material, provides: "* * * In event such employer shall fail or refuse to pay the compensation herein provided * * * it shall be the duty of the workman * * * to file a claim therefor in the manner and within the time hereinafter provided. * * * In event of the failure or refusal of any employer to pay any workman entitled thereto any instalment of the compensation to which such workman may be entitled under the terms hereof, such workman shall be entitled to enforce the payment thereof by filing in the office of the clerk of the district court a claim which shall be * * * filed not later than one (1) year after such refusal or failure of the employer so to pay the same. * * *" Plaintiff, in answer to this contention, himself relies upon the provisions of 1941 Comp. § 57-914, which provides: "The failure of any person entitled to compensation under the * * * Act * * * to give notice of injury, file claim, or bring suit within the time fixed by said act shall not deprive such person or persons of the right to such compensation where such fail-

ure was caused in whole or in part by the conduct of the employer or insurer which would reasonably lead the person * * * entitled to compensation to believe the compensation would be paid."

Defendants, arguing under this point, seem to make two contentions: (1) There is no evidence warranting the application of § 57-914, supra, and (2) that, assuming the conduct of defendants excused delay in filing suit until soon after October 27, 1941 (which was the date upon which defendant, the company and insurer, definitely refused to pay), the present action is still too late because not filed soon enough after such refusal—because not filed within a reasonable time after refusal.

■ We need say nothing more upon subdivision 1 under this point, than to refer to the statement of facts heretofore set out in this opinion. The facts stated were, necessarily, all set forth in a light most favorable to plaintiff, in whose favor the verdict was rendered. The evidence, under the well established rules referred to so often that citation will be omitted, is to be given the most liberal construction in favor of appellee.

We do not undertake to glean and recite from the voluminous record all the facts and circumstances to support our conclusion that there was evidence sufficient to support the judgment upon this ground. Much is already shown by the recital of facts preceding. The record is voluminous and the evidence is, in many respects, clearly conflicting; and that on the part of plaintiff, particularly as it pertains to some of the medical testimony, is not as conclusive as might be desired, although we cannot say that it is not sufficiently satisfactory to meet the substantial evidence rule by which we are controlled.

■ It is not enough to say that plaintiff could, or, that he should, have been more diligent in the commencement of the suit, when, under the facts and circumstances testified to, viewed in a light most favorable to plaintiff, and upon which the jury was entitled to rely, we must say there is substantial evidence to support a jury finding of reasonable diligence.

The evidence shows an unlettered, unlearned and mentally ill claimant being advised by the Insurer that it will act as soon as an investigation had been completed; an investigation which might be termed far too dilatory, one which was completed only after a period of months; repeated statements by the adjuster representing the company, the Insurer, that payment would be forthcoming; and, the evidence tending clearly to indicate, if it does not show affirmatively through lapse of time and the conduct of Insurer, that Insurer's decision to disclaim liability was unfairly postponed until the statutory limitation had been effected. Plaintiff was making considerable effort, particularly from soon after his last injury, to secure compensation for his injuries. This is amply shown by the numerous contacts he made with Employer, the adjusting agency, and the doctors and laboratory acting for and on behalf of one

or the other defendants, as well as the positive statement made by the adjuster that the claim would be paid.

Defendants urge that the adjuster to whom such statement is charged was not authorized to bind defendants or either of them by such commitments; that his duties were confined solely to an investigation of, and a report upon, the case. We doubt whether authority of the adjuster can be held to fall within such limits under the circumstances of this case.

Under the contention that there is no evidence that the adjuster's authority was wide enough to charge the insurance company with responsibility for its adjuster's misleading statements, defendants seem to disregard the fact that the insurance company itself may be held to have participated to some extent in deceiving the claimant, although not purposefully, since it promised to give the claim "further attention" after the investigation was completed, and that it did not finally announce its decision to reject until October 27, 1941; and it enjoyed the full and complete benefit of full cooperation on the part of plaintiff throughout the entire period of investigation.

■ Whether the adjuster actually had authority to promise payment, and whether plaintiff could rely upon his representations that the claim would be paid, we need not, and do not, decide. Numerous cases hold that such authority appertains to the business of an ordinary insurance adjuster. In this connection, and in support of the theory that adjusters ordinarily have authority to make settlement or to waive certain matters of form and detail, see St. Paul Fire & Marine Ins. Co. v. Mountain Park Stock Farm Co., 23 Okl. 79, 99 P. 647, 649; O'Connor v. Allemannia Fire Ins. Co., 128 Pa.Super. 336, 194 A. 217; Staats v. Pioneer Ins. Ass'n, 55 Wash. 51, 104 P. 185; Sudnick v. Home Friendly Ins. Co., 149 Pa.Super. 145, 27 A.2d 468; Friend v. General Accid., Fire & Life Assur. Corp., Ltd., 289 Ill.App. 622, 7 N.E.2d 507.

But, be that as it may, we must, and do, say that from all the evidence in the case, viewed in a light most favorable to the plaintiff, as appellant here, we cannot disturb the verdict based upon the necessary assumption that claimant had been misled "in whole or in part" by the conduct of the employer or insurer.

■ That other influences may also have operated upon the mind of plaintiff to thus cause him to postpone the filing of his suit would not alter the situation. The statute provides that it is only necessary to connect claimant's delay "in whole or in part" with the conduct of the employer to excuse a failure to file claim or a suit within the time prescribed. See Ritter v. Albuquerque G. & E. Co., 47 N.M. 329, 142 P.2d 919, recently decided.

■ Our statute does not go so far as to require actual waiver by agreement or conduct which would meet the technical rules supporting estoppel. It only requires proof of such conduct as would "in whole or in part" reasonably lead claimant to believe

compensation would be paid. This language of the act, as well as the act as a whole, must be liberally construed in favor of claimant. Henderson v. Texas-New Mexico Pipe Line Co., 46 N.M. 458, 131 P.2d 269, 272. We hold that the jury was entitled to conclude that the failure of plaintiff to file his claim or bring suit within the time fixed by law "was caused in whole or in part" by such conduct on the part of the employer and/or insurer as would reasonably lead the person or persons entitled to compensation "to believe the compensation would be paid". 1941 Comp. § 57-914.

■■■ There is likewise no merit to defendants' contention to the effect that, even assuming that § 57-914, supra, prevented the operation of § 57-913, supra, from becoming operative until after the Insurer's letter of October 27, 1941, disallowing the claim and declining compensation, still the limitation should be held to become operative shortly thereafter and certainly before May 27, 1942, the date on which the present suit was filed. We are not disposed to fix any particular time short of one year after October 27, 1941 within which the action must have been filed. See Guy v. Stoecklein Baking Co., 133 Pa.Super. 38, 1 A.2d 839.

The authority of the Texas decisions, largely relied upon by defendants, does not persuade us to a contrary view. We do not see a sufficient similarity between the Texas statutes and our own. Our statute, for example, does not "waive strict compliance". It waives, simply, the limitation, when the statutory basis for waiver appears. And, likewise, as counsel for plaintiff so convincingly point out, the Texas statute does not base the extension of time specifically upon the representations, or conduct, of the employer or insurer, as does our own. The Texas cases upon which defendants rely in this respect almost exclusively, are, we believe, readily distinguishable. Some of the cases cited in support of defendants' position are: Middleton v. Hartford Acc. & Indemnity Co., 5 Cir., 119 F.2d 721; Texas Employers' Ins. Ass'n v. Sitchler, Tex.Civ.App., 76 S.W.2d 145; Maryland Casualty Co. v. Merchant, Tex.Civ.App., 81 S.W.2d 794; Texas Indemnity Co. v. Cook, Tex.Civ.App., 87 S. W.2d 830.

Aside from the basic dissimilarity of statutes by which we may distinguish the Texas decisions, some of these cases indicate, nevertheless, that even under the strict statutory provisions of the compensation act of that state, the claimant needs exercise only reasonable diligence; and the question of what is reasonable time and appropriate conduct ought, ordinarily, to be for the jury.

Since our legislature has permitted claimant one year from denial of liability, i. e.; failure or refusal to pay, where the conditions recognized by § 57-914 are not present, to file suit, it might be said that a fair interpretation of the statute would give him one year after the definite disclaimer by the Insurer as shown by its letter of October 27, 1941, to so file. In this

connection, see Jones v. Massey, 97 N.C. 148, 1 S.E. 702; Killips v. Putnam Fire Ins. Co., 28 Wis. 472, 9 Am.Rep. 506, interpreting a limitation statute as granting new period equivalent to original period for filing suit where there were promises inducing a delay or time lost in negotiating and in denial of liability. Other authorities indicate, if they do not hold, that the extended period under such circumstances should be only "a reasonable time rather than a whole new statutory period". 1 Williston on Contracts, Rev.Ed., § 986. As pointed out in a recent annotation which touches upon the subject (130 A.L.R. 321), the adoption of a reasonable time as a criterion does not mean that the statutory period of limitations might not itself be treated as a reasonable time. Many cases hold that the time to be allowed is to be defined as a "reasonable time", but which should not exceed that of the original limitation period.

 Therefore, whichever test is adopted—and as to which is the appropriate one we do not decide—that of allowing a full year (the original statutory period) from the time of the rejection of the claim in October, 1941, or "a reasonable time" after the rejection of the claim and yet within the period of original limitation of one year, we hold that, under the circumstances, the action here was filed within time.

Under an additional assignment defendant raises some objection challenging the fairness of the trial and contending that through certain occurrences the sympathy of the jury was unduly aroused and unfairly influenced. As we understand these questions, there are three unrelated contentions; under one of these it is claimed that plaintiff, while being cross-examined as to the condition of his health prior to the date of his first injury, had an epileptic seizure. In the first place, it may be said that the record does not disclose that plaintiff had such a seizure, although it is shown that during the course of examination he "became ill" and the court recessed for a short time; and upon resumption thereof there is nothing to indicate that defendants did not have opportunity for full and complete cross-examination.

 No objection to any such occurrence nor motion for mistrial on account of the illness was made at the time. This came in the motion for a new trial. Defendants claim that the attack of sickness, which they designated as a seizure, was prejudicial to them. There is no showing that the illness was feigned or that it was anything that could have been anticipated or avoided. The motion was, in any event, a matter within the trial court's discretion (64 C.J. 103, 104, § 109) and being fairly resolved against defendants, we inquire no further.

 It is further urged that the trial was unfair and a new trial should have been granted for the reason that during the trial of the case some reference was made by plaintiff and his attorney to the cost of employing an attorney. The record dis-

closes that this occurred under direct examination and, it could properly be said, was merely explanatory of plaintiff's delay in bringing suit. The trial court held it was not, under the circumstances, prejudicial. The question and answer might have indicated that plaintiff was a poor man, but we are not prepared to say that, in view of the character of the question asked and answers given they were for the purpose of showing such fact. The trial court likewise appraised the situation.

An issue before the court at that time, and an important one, had to do with the reasonableness of plaintiff's conduct in failing to employ counsel during his negotiation with defendants. Certainly costs of attorney fees is a factor and so might be considered as it would relate to the reasonableness of a decision to employ, or not to employ, an attorney, in these negotiations. The Compensation Act provides the payment of attorney fees by the insurer or employer only if the matter is litigated to a successful conclusion and the court so orders. 1941 Comp. § 57-923. If it could be said that any prejudice resulted in any way from the court's action in permitting the question, this was cured by the court's specific direction to the jury thereafter given to disregard all statements or remarks relating to attorney fees and kindred matters. This direction and instruction to the jury was given at defendants' request, and with the concurrence of counsel for plaintiff. Any prejudice resulting from erroneous admission of evidence must clearly appear or it will be assumed that the instruction to the jury to disregard will have cured the error of improper admission. Villareal v. Billings, 35 N.M. 267, 268, 294 P. 1111.

Another of the questions objected to has to do with charges made by physicians and surgeons when they appear and testify in court, and the other relates itself to a statement in court as to the cost and relative value of certain expert medical testimony. No objection was made to either the questions or the answers at the time, except qualifiedly as to one; and as to this one the objection was on the rather narrow ground that a certain supposition was untrue.

One of the witnesses for plaintiff testified that plaintiff was waiting for additional information as to whether the company would take further action after receiving another report upon plaintiff's injury. He said that he did not think it was necessary to hire an attorney while awaiting the company's answer. The question objected to in this connection was this one propounded to a witness for plaintiff, his son, by plaintiff's attorney: "You knew if you hired a lawyer you would have to pay out quite a slice?" The court, upon objection of defendants, stated: "I will allow the question with respect to some incentive so long as he told the father he was going to be paid." Counsel for defendants seemed to be satisfied with this statement of the court permitting, qualifiedly, the admission of the testimony in response to the ques-

tion theretofore objected to. At least no further objection appears. Defendants are not able to show where any prejudice arose, or could reasonably have arisen, because of such alleged error. There is no merit to this contention.

Defendants' next objection goes to the sufficiency of the evidence; claiming there is no proof of causal relationship between the injuries and plaintiff's condition; that any relationship is purely conjectural so for as it relates to the first injury, that of February 12, 1940, allegedly resulting in grand-mal epilepsy. No question appears to be raised as to the causal relationship, as it refers to the herniae. The medical testimony for plaintiff was sufficient, if believed, to show that the epileptic condition was caused by the injury of February 12. Much reliance is placed by defendants upon the explanation afforded by their medical testimony to the effect that plaintiff was suffering only from arteriosclerotic epilepsy; but the most that can be said of this is that it is simply evidence conflicting with that offered on behalf of plaintiff.

Appellants' counsel questions strenuously, and with some reason, whether the medical testimony on behalf of plaintiff was sufficiently definite as to show positively the cause of the disability suffered, particularly as to the epilepsy. True enough, the medical testimony relied upon could have been more satisfactory; and yet we must recognize the limitations applying to the medical, as to other professions. An opinion, an honest effort to logically and rationally connect the cause and effect, is all that we can hope to obtain.

 A medical expert may state his inferences, or opinion, as to the cause of certain injuries. Parkhill v. Bekin's Van & Storage Co., 169 Iowa 455, 151 N.W. 506; Foose v. Hawley Corp., 120 W.Va. 334, 198 S.E. 138; Patrick v. Treadwell, 222 N.C. 1, 21 S.E.2d 818; 32 C.J.S., Evidence, p. 243, § 534. He is not bound to rest his findings upon positive evidence. Indeed, under many circumstances and according to a large number of decisions, he may not even give his conclusions as to what particular occurrence caused a particular condition, or "whether detailed circumstances actually produced the injury or death". 32 C.J.S., Evidence, p. 243, § 534. That would be, under many holdings, an invasion of the province of the jury.

 It would have exacted of the medical witness far too much to have required of him to state, as a matter of certainty, that the illness diagnosed was definitely caused by the alleged head injury of February 12. To say that it could have been, and probably was, so caused, with such conclusion based upon the patient's present state of health, his health history, the evidence of the head injury of February 12, and other pertinent factors, was sufficient in exactness to justify a submission of the issue to the jury. After all, medical testimony, as other expert evidence, is intended to aid, but not to conclude, a court or jury.

The jury is entitled to rely upon rational inferences deductible from the evidence, whether arising from expert testimony or otherwise.

Notwithstanding claimant may have been suffering from some other ailment at the time, the injury relied upon is compensable if it was the immediate cause of disability. Robinson v. Mittry Bros., supra. Even conceding a pre-existing condition of arthritis, as defendants insist is the case here, and the fact that it may have contributed somewhat to the present disability, that, nevertheless, would not preclude payment of compensation for injury received from a fall. Kamp v. Disney, 110 Colo. 518, 135 P.2d 1019. "Neither a congenital weakness nor a pre-existing disease will render noncompensable an injury received under conditions which would otherwise make it compensable." 1 Honnold on Workmen's Compensation, § 98.

Under Point 4 defendants allege error upon the ground that, while plaintiff's case in chief was still unfinished, Dr. Stewart, the psychiatric expert for plaintiff, was asked and not permitted to answer the following question: "Assuming he (plaintiff) did not sustain an injury to his head on February 12, 1940, and that the fall on June 29, 1940, was an epileptic seizure, would you still be of the opinion that the epilepsy was traumatic?" The court sustained the objection to the question, upon the ground that it assumed a state of facts (that of non-injury to the head on February 12, 1940) which was not yet in evidence.

An exception to the ruling was noted, but no further action was taken by counsel at that time. This ruling is claimed to be reversible error for the reason that it operated as an undue restriction on right of cross-examination. Counsel for plaintiff urges, and properly so, that under the circumstances the question was properly excluded since all the relevant evidence in the record at the time this question was asked indicated that claimant had received a head injury on February 12. All the evidence tending to discredit the occurrence of such injury was subsequently introduced. It is elementary that hypothetical questions must be based upon facts in evidence. State v. Klasner, 19 N.M. 474, 479, 489, 145 P. 679, Ann.Cas.1917D, 824; II Jones on Evidence, 4th Ed., 694, § 371; 70 C.J. 547, § 706; 70 C.J. 694, § 840; 32 C.J.S., Evidence, p. 361, § 552. It is not disputed that counsel would have been entitled to ask the question, by first showing that it was subject to subsequent proof of its underlying assumption. Such question would have then been unobjectionable. But, even then, the ruling would have been within the court's sound discretion in determining the order in which it would receive such evidence. Helmig v. Kramer, 48 Ohio App. 71, 192 N.E. 388.

In any event, absent a showing, or any suggestion, of intention of counsel to connect by subsequent proof and thus to formulate the foundation for the question

now so ruled out, the assignment is without merit. III Jones on Evidence, 4th Ed., p. 1498. "If there is no testimony in the case tending to prove the facts assumed by the hypothetical question, such question is improper." II Jones on Evidence, 4th Ed., p. 694, § 371.

Counsel for plaintiff made it plain by his objection to the question asked, that it was only upon the ground that the question "assumed a state of facts not in the record". If counsel for defendants was then endeavoring to test the expertness of the witness, as he now suggests in his brief was a right not to be denied him, he should have then and there so indicated to the court in some appropriate way. He merely took an exception to the ruling sustaining plaintiff's objection and persevered no further.

We are not unmindful of the rule that reasonably wide latitude is given in propounding questions testing the skill of an expert witness. "The modes and purposes are substantially the same as when testing ordinary skill." II Wigmore on Evidence, 3d Ed., p. 811, § 684. It cannot be said, however, that this was intended to be any such question—a question generally aimed at testing skill. The court doubtless did not so construe it in sustaining the objection. The question asked and being then discussed was not a general question testing the witness' skill. It related specifically to a matter at issue in the case and, as we have said, assumed a set of facts which needed thereafter to be connected up by proof as a foundation for the hypothesis.

In any event, since the court has reasonable discretion in its control of cross-examination, unless we could say, which we cannot, that it has abused its discretion in rejecting this question which might be misleading to a jury rather than calculated to propose a fair test of such witness' expertness, we must hold there is no error.

We have next an assignment under which it is urged that the motion for a new trial should have been granted, based upon what counsel for defendants claim is a sufficient showing of perjury on the part of plaintiff to so require. Plaintiff testified that he had signed no release of claim in connection with a small payment of $10.75 made to him and endorsed over to the employer soon after the date of the first accident when, as a matter of fact, a purported release, produced not at the time of the trial but at a time immediately after, showed that he had signed such a document. We hold there was no error in the trial court's refusal to set aside the verdict and grant a new trial, in view of the showing made.

We do not know the circumstances surrounding the giving of the alleged release relied upon, obviously grossly inadequate in view of the injuries suffered, as was thereafter determined; whether there was any consideration therefor, or whether, in fact, plaintiff understood the document to represent a full and complete release of all claims. Proof of perjury would of necessity have to rest upon a consideration of many factors which might enter into the

case, all of which would be entitled to disclosure upon a new trial. Such motion, the trial court was entitled to hold, came too late.

During the trial the court observed, arguendo, while considering an objection made by defendants to a question, that expert or medical witnesses might be better witnesses when they testify voluntarily and for a fee than when subpoenaed; and upon this observation defendants rely for error, although at the time no objection was made by counsel to this remark. Subsequently defendants moved that the jury be instructed to disregard any statement as to such matter. The court so instructed the jury.

Defendants assign the remarks of the court so made as error because of the alleged failure of the court to exactly comply with the rule (15f) of Rules of Pleading, Practice and Procedure. This rule requires the court to advise the jury, without request therefor, that it is the sole judge of the facts in evidence, in the event the court comments on the evidence.

Without determining whether the court's statement was in fact a comment upon the evidence or the credibility of any witness within the rule relied upon, it will be noticed that the court rescinded its remarks by withdrawing the statement and all references to the matter covered thereby from the jury. The court further instructed the jury that they were the sole judges of the weight and credibility of the testimony and said further, in substance,

that the court intended by none of its instructions or rulings to express an opinion upon any of the facts at issue; that all such were reserved exclusively for determination by the jury. The error thus complained of is without merit.

Defendants also urge that the court erred in allowing hospital and operating fees for plaintiff's herniae in the event plaintiff elected to have the herniae repaired. This objection seems to be two-fold: because the claim is duplicitous in stating claims for injuries sustained in more than one accident, and because there was no notice of the accident and injury resulting in the herniae, and that suit was filed more than one year after this occurrence. The questions thus raised are likewise without merit.

Any objection as to duplicity in pleading is too late when made for the first time in this court, even conceding that the Workmen's Compensation Act enjoins upon litigants an observation of the niceties in proceedings obtaining in ordinary actions. Such objections are waived unless made before answer. Porter v. Alamocitos Land & Livestock Co., 32 N.M. 344, 358, 256 P. 179; Valdez v. Azar Bros., 33 N.M. 230, 237, 164 P. 962. Therefore the claim for herniae injuries was before the jury regardless of any defects here relied upon in form of pleading.

With reference to the argument that no notice was given as required by statute and no suit filed within the one year limitation, enough has already been said. We have held that there was substantial evidence to

support a verdict of the jury based upon evidence that the employer had sufficient knowledge of all injuries relied upon to excuse notice, and, likewise, that the conduct of the Insurer was sufficient to excuse the delay in filing suit.

Finally, error is assigned because of the allowance by the trial court of $1,500 for fees for plaintiff's counsel in the trial of the case, the objection being that this was excessive. The only testimony bearing upon the question of the value of such services is that of a member of the bar who stated that 25 per cent. of the recovery, which, under the circumstances of this case, would be somewhat in excess of $1,500, would be reasonable compensation. This was estimated upon the basis of the work involved, the contingent nature of the employment and the value of the achievement. We are unable to say that the fee is so excessive as to show an abuse of discretion. The record, as we have said, is voluminous, and considerable time was necessarily consumed in preparation and trial of the case by counsel for both sides. Some very nice, not to say somewhat close, questions have been raised by defendants. A fee fixed by the trial court on the basis of reasonable compensation is a finding not to be disturbed unless patently erroneous as reflecting an abuse of discretion.

Were this a case wherein our own discretion were to be invoked in the first instance we might say that at least some members of the court would be inclined to hold the fee so fixed to be excessive; but we are governed by the rule which permits us to disturb the exercise of the trial court's discretion in such matter only upon a clear showing of abuse thereof. The reasons which would call for a disturbance of the amount so fixed by a trial court must be very persuasive. Merrick v. Deering et al., 30 N.M. 431, 236 P. 735; Williams v. Dockwiller, 19 N.M. 623, 145 P. 475. Cf. Independent Steel & Wire Co. v. New Mexico Cent. R. Co., 25 N.M. 160, 178 P. 842. Many considerations enter into the matter of fixing attorney fees, not the least important of which are: the ability, standing, skill and experience of the attorney; the nature and character of the controversy; the amount involved, the importance of the litigation and the benefits derived therefrom. Thornton on Attorneys at Law, § 449 (referred to with approval in Williams v. Dockwiller, supra). We observed also in the case last cited that the trial court which fixes the fee supposedly has a superior knowledge of the actual services rendered and the charges usually prevailing in the particular locality for such services. We must, therefore, decline to disturb the fee so fixed by the trial court.

Plaintiff now asks that additional fees be awarded for services of his attorney in this court upon appeal, and this will, as a matter of course, be allowed. In view of the numerous questions raised and briefed upon appeal, the extent of the record and the time and skill necessarily consumed in briefing and presenting the ques-

tions raised, an attorney fee of $400 is here-
by fixed and allowed for and on account of
this appeal.

Counsel for appellants has thoroughly
and ably presented the many questions here
involved both by brief and in oral argu-
ment, but no point relied upon for reversal
can be sustained.

Finding no error the judgment is af-
firmed, and.

It is so ordered.

SADLER, C. J., and BICKLEY and
BRICE, JJ., concur.

THREET, J., did not participate.