Olen F. FEATHERSTONE and Martha
Featherstone, Appellants,

v.

Max BARASH, Appellee.

No. 9123.

United States Court of Appeals
Tenth Circuit.

Aug. 30, 1967.

John H. Tippit, Denver, Colo., for appellants.

Bryan G. Johnson, Albuquerque, N. M. (Marshall G. Martin, Albuquerque, N. M., with him on the brief), for appellee.

Before MURRAH, Chief Judge, and PICKETT and BREITENSTEIN, Circuit Judges.

PICKETT, Circuit Judge.

This is a suit by an attorney to collect an $85,000 fee alleged to be due for representing clients in administrative proceedings involving extensive federal oil and gas leases. The United States District Court for the District of New Mexico determined that the reasonable value of the services performed was $22,-500, of which $15,000 had already been paid, and a judgment for $7,500 was entered accordingly. That judgment was thereafter reversed by this court and the case remanded for further findings of fact in accordance with Rule 52(a), F.R.Civ.P. Featherstone v. Barash, 10 Cir., 345 F.2d 246. After then filing a detailed memorandum opinion, the trial court entered the same judgment, the client appealed, and the matter is once again before us for review. Although several points are urged, the dispositive question is the sufficiency of the evidence to support the judgment.

In May and June of 1956, the Cheyenne Land Office of the Bureau of Land Man-

agement rendered two ex parte decisions cancelling all non-competitive oil and gas leases and rejecting all pending lease applications and assignments held by appellant Olen F. Featherstone and associates in the State of Wyoming, for alleged violation of the acreage limitation provisions of the Mineral Leasing Act, 30 U.S.C. § 181 et seq. Shortly thereafter, Featherstone retained appellee Max Barash, a Washington, D. C. attorney specializing in oil and gas matters, to represent him in an appeal to the Director of the Bureau of Land Management. They held a conference in Denver on July 19–20, and Barash was promptly paid for his time in connection therewith. On June 29 Barash wrote Featherstone, stating that it was "premature" to discuss fees, and that "It is difficult at this time to anticipate the amount of time and effort which will have to be devoted to the task at hand," and that "the over-all fee should be predicated in substantial measure upon the results accomplished." He did, however, request "an advance retainer fee of $2500.00 which will be credited on the total over-all fee which you and I can discuss and agree upon later." Featherstone paid this retainer, and by letter dated July 5, stated: "The matter of fees and the handling of the case is a matter that we are leaving entirely to your judgment. We feel confident that it will be handled in a fair and just manner and to the best of your ability." During the summer and fall of 1956 Barash prepared and filed the notice of appeal, a brief, and later a supplemental brief. In September Barash represented Featherstone at a hearing of the Senate Committee on Insular and Interior Affairs in Albuquerque. Barash submitted a $2500 bill for this service and was promptly paid. On December 13, 1956, Barash submitted a bill for $7500, less a $2500 credit for the retainer fee paid in July, for services rendered to date in connection with the Bureau of Land Management appeal and related matters. Featherstone promptly paid the balance of $5000. It is apparently undisputed that all services rendered by Barash to this date were paid in full.

During a meeting in Denver on January 30–February 1, 1957, Barash contends, and the trial court found, that it was agreed that Barash was to continue representing the Featherstone interests and that he was to bill Featherstone on an interim or minimum account basis from time to time and that when the matter was concluded a final statement for services rendered would be submitted. Featherstone denies the existence of any such arrangement. Thereafter Barash submitted the following statements to Featherstone:

Feb. 7, 1957:  $2000 – for services rendered in connection with the Denver conference Jan. 30–Feb. 1, 1957.

June 1, 1957:  $5000 – for services rendered in connection with
April 1, 1958:  $5000 – various matters pertaining to the pending
Oct. 1, 1958:  $5000 – Bureau of Land Management appeal.

Each of the bills for $5,000 contained the wording "on account", and each was accompanied by correspondence describing it as an "interim statement." Each was promptly paid.

The decision on the Bureau of Land Management appeal, in which the Director vacated in part the Cheyenne Land Office decisions of 1956 and remanded the case for the filing of a complaint against Featherstone, was not given until February 2, 1959. During the intervening time Barash's principal efforts had been directed to expediting a decision and to obtaining approval of pending assignments of certain of Featherstone's leases. Barash apparently expended considerable effort in the form

of frequent visits and telephone calls to government officials, particularly personnel of the Senate Committee on Interior and Insular Affairs. He also performed some services relating to the filing of statements of option holdings and certain related income tax matters. It does not appear that during this intervening time Barash filed any further briefs or appeared in any formal hearings. The extent of Barash's legal research and the amount of time necessarily consumed in connection with these services is in dispute.

Featherstone terminated Barash's services by letter dated May 19, 1959. Barash answered on May 26 and clearly indicated that he expected to submit a final, comprehensive statement at some indefinite future date.[1] There apparently was no further discussion concerning fees until April 18, 1960, when Barash wrote Featherstone and suggested that they "get together and discuss settlement of my account." On April 20, Featherstone answered: "Concerning settlement of your account which you mentioned, this comes as a considerable surprise. I had thought that all bills submitted by you had been paid and that our ac-

counts are square to date." Additional correspondence failed to produce a settlement of the account. On January 5, 1961, Barash sent Featherstone a final statement for $85,000, which Featherstone refused to pay.

At the trial Barash claimed that in addition to the $15,000 paid on account, there was a balance due of $85,000 for legal services rendered from December 13, 1956 to May 19, 1959, and that this bill was submitted pursuant to the alleged understanding between him and Featherstone that there would be a final statement upon completion of his services. He introduced evidence to show that his legal services were complicated and extensive and that his qualifications were outstanding. He presented neither time records nor expert testimony to establish the money value of his services. Featherstone denied the fee understanding claimed by Barash and introduced evidence to show that the amount of time necessarily devoted to the case was limited and that the results achieved were uncertain or unsatisfactory. He presented experts who testified that in their opinion the amount already paid exceeded the reasonable value of Bar-

---

1. In this letter, Barash stated: " * * * the last statement for services I forwarded to you in connection with the handling of the Wyoming appeal was on October 1, 1958. Since then, I have not billed you for services either with respect to the Wyoming case or in connection with a few other matters handled for your office. It seems unnecessary at this late date to say that in handling your various problems I have done so not merely as a lawyer but as a warm personal friend of many years standing. Because of the mutual trust and respect we have for each other, it was never deemed necessary to set out in writing exactly what my fees would be. You have always been most gracious to me and I deeply appreciate it. It has been, I think, mutually understood that when the Wyoming case was finally decided you and I would sit down and decide what my final fee should be. I have never entertained any doubt that if things went well with you I would be treated generously. I think you understand that from the day I undertook to handle the Wyoming appeal I have worked constantly to achieve success. While you have paid me substantial fees over the last couple of years, believe me when I say that the vast amount of time and effort I have devoted to this case far exceeds the fees received. I think you will be the first to agree that my services in providing the legal guidance to Harvey Roelofs in setting your house in order, as well as the efforts I have devoted over the last three years to achieve success on the Wyoming appeal go far beyond the normal call of legal services.

Nevertheless, in the light of your present circumstances I would not wish to burden you with any additional statement for services rendered in the Wyoming case. I prefer that some day in the future when things are brighter you and I may get together and work it out. In the meantime, I hope you will understand that I am most anxious to be helpful in bringing to a successful conclusion the Wyoming case. Nor should you hesitate to call on me for assistance in any other matter. I am sure that in due time I would be paid for my services."

ash's services. It developed on cross-examination, however, that these experts had an admittedly limited awareness of the circumstances of the case.

The trial court found that Barash's letter of June 29, 1956 and Featherstone's answer of July 5, 1956, "constituted an agreement that at some time thereafter there was to be a discussion and an agreement concerning the fee;" that during the meeting held in Denver on January 31–February 1, 1957, "it was agreed between the plaintiff and Olen F. Featherstone that Mr. Barash was to continue to represent the Featherstone interests and that he was to bill Mr. Featherstone some minimum fee to cover overhead or office expenses from time to time, and that when the matter was over Mr. Featherstone would pay him in full for services rendered"; that the $15,000 in interim payments was not intended to be final; and that Barash was entitled to an additional $7500 as a reasonable fee for legal services.

■ We have reviewed the record and are satisfied there is adequate evidentiary support for the trial court's findings. Prior to the meeting in Denver on January 30, 1957, all statements either specified the services included therein or stated that the billing was for "legal services to date." Accompanying correspondence also specifically described the included services. Likewise, the $2,000 bill for the meeting in Denver was specifically limited to time charges for that conference only. In contrast, the bills of June 1, 1957, April 1, 1958, and October 1, 1958, were clearly stated to be "on account"; and accompanying correspondence referred to them as "interim statements." They were paid by Featherstone without objection or disclaimer of further obligation. We agree with the trial court that these letters and bills indicate they were not intended to be final and that the alleged arrangement for interim or minimum account billing had actually been made.

■ An attorney is, of course, entitled to recover the reasonable value of his professional services. Among the many factors which properly may be considered in a determination thereof are the nature and extent of the services, the time necessarily consumed, the professional skill and experience of the attorney, and the results accomplished. Each case must be governed by its own facts and circumstances. See, Simler v. Conner, 10 Cir., 352 F.2d 138, cert. denied 383 U.S. 928, 86 S.Ct. 931, 15 L.Ed.2d 846, reh. denied 384 U.S. 914, 86 S.Ct. 1338, 16 L.Ed.2d 367; Wyoming Ry. Co. v. Herrington, 10 Cir., 163 F.2d 1004; Webster Motor Car Co. v. Packard Motor Car Co., D.C.D.C., 166 F. Supp. 865, appeal dismissed 100 U.S. App.D.C. 161, 243 F.2d 418, cert. denied 355 U.S. 822, 78 S.Ct. 29, 2 L.Ed.2d 38, reh. denied 355 U.S. 900, 78 S.Ct. 259, 2 L.Ed.2d 197, reh. denied 357 U.S. 923, 78 S.Ct. 1358, 2 L.Ed.2d 1363; McLean v. American Sec. & Trust Co., D.C. D.C., 113 F.Supp. 427; Elsea v. Broome Furniture Co., 47 N.M. 356, 143 P.2d 572, 584; Williams v. Dockwiler, 19 N.M. 623, 145 P. 475; Anno. 56 A.L.R.2d 13, 143 A.L.R. 672; 7 Am.Jur.2d Attorneys at Law, § 235 et seq.; Canons of Professional Ethics of the American Bar Ass'n, Canon. 12, Am.Jur.2d, Desk Book Doc. No. 91, p. 225. Here it cannot seriously be disputed that Barash has attained a position of prominence in the field of oil and gas law. The record indicates that Barash not only conducted research and gave legal opinions to Featherstone, but also assisted generally with option statements, assignments and related matters. Counsel for the Senate Committee on Interior and Insular Affairs testified that Barash had frequently called or visited them in Featherstone's behalf. Barash himself testified that he had consumed about 300 days' time in his service to Featherstone; and that he ordinarily charged a fee of $250 per day in the office and $400 per day out of the office. Barash's proof of time spent was somewhat vague, however, and the court felt that some of his visits to government offices might have been unnecessary. The court de-

termined that a charge of $250 per day for 100 days was reasonable, and then discounted the resultant $25,000 by 10% "in order to be entirely fair with the defendant", thus arriving at a total fee of $22,500 and a balance due of $7,500 after crediting the $15,000 paid "on account." Such a determination is, of course, not susceptible of mathematical certainty, and we must afford appropriate respect to the trial court's primary consideration of the matter. We are satisfied that the determination is not clearly erroneous.

Affirmed.