Williams v. Dockwiller, 19 N. M. 623

(No. 1717, December 28, 1914)

W. A. WILLIAMS, et als., Appellants, vs. ALPHONSE DOCKWILLER, Appellee.

## SYLLABUS BY THE COURT.

1. Where the question as to the amount of recovery by plaintiff as attorney's fees upon a suit filed to foreclose a real estate mortgage, securing the payment of a promissory note for approximately $10,000, is submitted to the court, upon conflicting evidence, and the court awards the sum of $500, and the award is sustained by the evidence, the same will be upheld on appeal, in the absence of evidence showing oppression or collusion.                                626

2. In cases tried before the court the erroneous admission of testimony will afford no ground for reversal unless it is apparent that the court considered such testimony in deciding the case.                                . P. 632

3. Where a promissory note provides for the payment of a reasonable attorney's fee, if suit be brought on the note, or if attorneys are employed to collect the same upon default in the payment of the note, or other condition broken, and the note is placed in the hands of attorneys for collection, the payee of the note is entitled to recover from the payor such sum, as attorney's fees, as he has paid, or become liable to pay, to the extent of the reasonable value of such services, whether the note is paid in cash, or a new note is executed in lieu of the past due obligation.                                P. 633

Appeal from District Court, Santa Fe County; Edmund C. Abbott, Presiding Judge. Affirmed.

MELVIN T. DUNLAVY, for appellant.

Court erred in rendering judgment for appellant as an allowance of any fee in excess of $150 for such fees was error. 58 Minn. 561; 36 Utah 6; 20 A. & E. Ann. Cases, p. 1371; 5 Ind. App. 4; 8 Cyc. 321; 46 Ia. 319; 124 Ind.

61; 49 Pac. 777; 23 Pac. 241; 137 Pa. St. Rep. 329; 88 Pac. 1057; 105 U. S. 45; 124 Pac. 733; 140 Pac. 339; 99 Ill. 616; 107 S. W. 1108; 24 So. 168; 1 Kent's Commentaries 462.

E. P. DAVIES and CATRON & CATRON, for appellee.

Value of services. 5 N. M. 427; 14 N. M. 181; 117 Pac. 734; 135 Pac. 457; 137 Pac. 586; 1 N. M. 464; 2 N. M. 29; 5 N. M. 142; 6 N. M. 54-61; 10 N. M. 177-231; 10 N. M. 67; 11 N. M. 1-15, 211-215, 533-537, 555-558, 658-666; 12 N. M. 388, 445-448, 519; 13 N. M. 360-362, 491-499; 14 N. M. 239, 271, 334; 99 Pac. 691; 103 Pac. 645; 107 N. M. 739; 110 N. M. 841, 833; 113 N. M. 823; 120 N. M. 307; 125 N. M. 625; 71 N. M. 1086; 85 N. M. 968.

## OPINION.

ROBERTS, C. J.—Appellee filed suit against appellant to foreclose a mortgage on certain real estate given to secure the payment of a promissory note for the sum of $9,000, interest etc., alleging in his complaint that appellant had failed to pay interest and taxes due, and, that by the terms of said mortgage deed the whole sum secured thereby became due and payable. The note provided " * * and if the same shall not be paid when due, we jointly and severally promise and agree to pay all costs of collection, including reasonable attorney's fees, if suit be brought on this note or if attorneys are employed to collect the same." The mortgage also provided for the payment of attorney's fees.

E. P. Davies was employed by appellee as attorney to conduct such foreclosure proceedings, and he prepared and filed the complaint, held frequent conferences with appellee relative to the suit, made certain other interested parties defendants, and investigated the records in the recorder's office for the purpose of determining other liens that might exist against the real estate in question and briefed the legal questions likely to arise on the trial of the cause. He also examined certain mortgages and notes prepared by other attorneys, representing Williams.

Appellee made no special agreement with Davies relative to his charges for his services in the case, except an agreement that Davies would only charge him $100 in the event the cause was compromised and settled on or before February 12, 1914. The case was not settled by that date, however, but was subsequently adjusted by Williams' paying appellee a certain amount in cash, and executing a new note and mortgage for the balance, at an increased rate of interest, but appellant's attorney performed no further legal service relative to said litigation after February 12, except possibly the examination and approval of the new note and mortgage. By the terms of the settlement between the parties it was agreed that appellant should be liable to appellee for such attorney's fees as appellee should be required to pay his attorney, which was to be subsequently adjusted with Mr. Davies. The parties were unable to agree upon the amount which should be paid Mr. Davies, and this question, upon evidence heard, was submitted to the district judge, without a jury. The trial court found that $500 was the amount reasonably owing Mr. Davies by Mr. Dockwiller, and entered judgment against appellant for that amount, and costs of suit.

From this judgment Williams appeals, and by his assignments of error raises the following questions: (1) That the court erred in rendering judgment for $500 and interest thereon, as a reasonable attorney's fee for the value of the services rendered by appellee's attorney; (2) That the court erred in allowing the appellee's attorney to testify as to services rendered on behalf of one Kerlee, a co-defendant, for which he received a fee; (3) That the court erred in basing its judgment for a reasonable attorney's fee upon the total amount of the note and interest, as the evidence showed that appellee recovered only $3,275.00 in cash, taking a new note for the balance due. These questions will be considered in the order stated.

1. Had appellee effected a settlement with appellant prior to February 12, 1914, he would have become liable to his attorney for only the sum of $100, and this sum would have been the measure of his recovery against appellant for attorney's fees. The cause was not adjusted at that time,

however, and of course appellant's attorney was not bound by his agreement with Mr. Dockwiller, and was entitled to the reasonable value of his services. As Dockwiller was liable to Davies for the reasonable value of his services, he was entitled to recover from Williams, under the provisions of the note and mortgage, such reasonable sum as he should be required to pay for the services rendered in the foreclosure suit. The parties being unable to agree upon the amount of compensation, submitted the question to the court, upon the evidence, for determination. Mr. Davies, testified in detail as to the various services performed by him in the foreclosure proceeding, and stated that, as a favor to Mr. Dockwiller he had agreed to accept $100 in payment for services rendered in this case, if a settlement was effected with Williams at a stated time; that the settlement was not agreed upon at the time stated and both parties to the suit clearly understood that the fee to be paid was the reasonable value of Davies' services. Upon the question as to what the reasonable value of the service was worth in money, appellee introduced three witnesses, all reputable members of the bar, who testified that the service rendered was reasonably of the value of from five hundred to one thousand dollars. Opposed to this, appellant produced an equally reputable member of the bar, who testified that, considering the agreement made by the attorney to accept $100, if settlement were made by a certain date, which was not made, however, until a day later, that $150 would be a reasonable fee, but, independent of any agreement, he thought $250 would be fair compensation for the service actually rendered.

**1** The court after hearing all the evidence, found that $500 was the reasonable value of the service rendered, for which amount judgment was entered. This was a question for the trial court to determine, upon the evidence, and as the evidence supports the findings in this regard, we cannot interfere. This rule is so well established in this state, that the citation of authority is hardly necessary. We cite, however, Vasquez vs. Spiegelberg, 1 N. M. 464; Romero vs. Desmarais, 5 N. M. 142; Patter-

son vs. Hewitt, 11 N. M. 1; Hancock vs. Beasley, 14 N. M. 239; James vs. Hood, 19 N. M. 234.

The rule stated in Thornton on Attorneys at Law, (Sec. 449) as to the elements which may properly be considered in determining the reasonable value of the services of an attorney at law, is as follows:

"It may be said generally that it is customary to consider: (1) the ability, standing, skill, and experience of the attorney; (2) his reputation as a specialist in the particular line of professional business in which he was retained; (3) the necessity and demand for his services; (4) the nature and character of the controversy, the questions involved therein, and the importance of the litigation; (5) the responsibility assumed; (6) the time and labor expended, and the benefits derived therefrom; (7) the amount involved; (8) the result; and (9) any other circumstance attending the cause which, according to established usage, will serve as a guide in determining what is a proper charge."

The same author further says (Sec. 548):

"Indeed, it is a matter of common knowledge that attorney's fees are higher in some states than in others, and, in the same state, are much higher in large cities than in small towns; and frequently there is a marked difference in this respect even between cities or towns of equal size and importance."

In view of the overwhelming weight of the expert evidence given in this case by attorneys familiar with the charges made for legal services in the city of Santa Fe, which fully warranted the judgment of the court, and in view of the standing of these attorneys, one of whom was at one time an associate justice of the Territorial supreme court and of the fact that the trial judge was familiar with the ability, standing, skill and experience of the attorney who rendered the services in question; and because the cause in which such services were rendered was pending in his court, and his presumed knowledge of the charge usually made in his district by attorneys for similar services, it would be somewhat presumptious for this court to set aside the allowance, and enunciate the doc-

trine that we will determine, regardless of the evidence, and the findings of fact by the trial court based on its supposedly superior knowledge of the actual service rendered, and the charges usually prevailing in that locality for such services, the amount of compensation which should be allowed attorneys in all cases wherein such question comes before us for determination.

In the case of Forrester & MacGinnis, vs. B. & M. Co., 29 Mont. 397, the court, in discussing a similar question said:

"The amount to be allowed, however, was a matter for the trial court to determine in the first instance from all the facts and circumstances in evidence. (3 Enc. Law 423.) There was a conflict in the testimony, and the determination of the trial court being supported by evidence which it deemed credible, will not be disturbed on appeal."

In the case of Farmers' Loan and Trust Co., et al., vs. McClure, 78 Fed. 209, the rule announced by Judge Sanborn, is stated in the syllabus, as follows:

"When the question of the value of the services of a solicitor, rendered in a suit for the foreclosure of a mortgage, has been decided, upon conflicting evidence, by the court in which the suit is pending, and which is familiar with the proceedings therein and the amount of services rendered, such decision will not be disturbed by an appellate court, in the absence of an obvious error of law, or a serious and important mistake in the consideration of the evidence."

In the case of Warren Deposit Bank vs. Barclay, 60 S. W., 853, the Kentucky court of appeals was asked to review an allowance made the attorney of an administrator for services rendered. The court, among other reasons stated, for not interfering with the allowance made, said:

"And, having before it (the trial court) the record of the proceedings involving the appointment of the administrator, and being more familiar with the standing of the attorney, his ability, and the customary charges allowed and collected at that bar and in that community

for similar services, we are disinclined to interfere with his findings."

It is true, as appellant contends, appellee was only entitled to recover such sum as he had become liable for as attorney's fees on account of the default of appellant, and, if he had incurred no liability, no recovery in this regard could be had. The reasonable value of the service rendered by appellee's attorney was a fact to be proved, like any other fact in a case, and the burden was on appellee to establish appellant's liability. To this end evidence was introduced, which, as we have shown, clearly justified the judgment entered. This being so, and there being no evidence of oppression or collusion, this court cannot set aside the judgment on the grounds urged.

2. In considering appellant's second proposition it is perhaps advisable to set out the claimed objectionable testimony in full, for, if as claimed by appellee, the services were a part of the duties which Davies owed appellee, by reason of his employment it was proper for the court to consider such services in fixing the compensation which Davies was entitled to recover from appellee, notwithstanding the services so performed might have resulted in a benefit to some other person, for, it is to be presumed that the court would take into consideration any fee which appellee's attorney was entitled to collect from some other source, in fixing the amount he would be entitled to receive from appellee, and would reduce the same accordingly. The claimed objectionable evidence was as follows:

"Q. Can you recall any other matter or any other work performed in connection with this case?

A. I prepared a brief upon the proposition as to whether or not the mortgagee could hold the subsequent purchaser to the payment of all the indebtedness which was covered by the mortgage, the subsequent purchaser, Kerlee, having purchased from Williams, with constructive notice that this mortgage of nine thousand dollars and interest and taxes covered this property which he bought from Williams.

Q. For whose benefit was this last work?

A. It was for the primary benefit of the mortgagee, of course.

Q. Did you prepare any other papers?

A. I prepared a release of the contract of purchase between Williams and his wife, Kerlee and his wife and mother-in-law in order to clear the record so that this deal could go through and be consummated and leave the matter in proper shape on the records of the court.

Q. What other papers, if any, did you prepare?

A. I prepared a mortgage, two mortgages in fact, and worked out difficult technical descriptions so that Mr. Kerlee and his wife could give mortgages back to Williams and thus make possible a consummation of the settlement between Dockwiller and Williams."

The ground of objection interposed to each of the above questions, and of the motion to strike out the answers thereto, was that the services above shown were all performed for Kerlee and his two defendants in interest, whom Davies also represented.

The contract of purchase between Williams and Kerlee is not incorporated in the record. From the answer to the first question it is not clear as to whether the attorney briefed the question as to whether the mortgagee would be required to first exhaust the real estate still standing in Williams' name, before proceeding against the land purchased by Kerlee, or whether he was seeking to ascertain whether the mortgagee could hold Kerlee to the payment of all the indebtedness owing by Williams to Dockwiller, in the event the proceeds of the sale of the land failed to satisfy the same. However, this may have been, certainly the attorney properly prepared himself upon the legal propositions which might arise, and this duty he owed to Dockwiller.

The release and the mortgages which Davies testified he prepared were necessary in order to effect the settlement between Williams and Dockwiller, and we fail to see wherein the court erred in refusing to strike out this testimony.

Appellant also contends that the hypothetical questions propounded to the witness for appellee included certain

services performed for Kerlee. Only one of the questions will be incorporated, because all the questions included the same enumeration of services performed. The following is the question propounded to Mr. Charles C. Catron:

"Q. Mr. Catron, in event that a client should come to you with a note aggregating ten thousand two hundred dollars, or thereabouts, principal and interest, together with a mortgage securing the same, and employed you to foreclose the mortgage and recover on the note, and that you first conferred with the plaintiff fully advising him as to his rights and as to the foreclosure; that on a subsequent date you again had a conference with your client in reference to the foreclosure proceedings, advising him further in the matter and having in the meantime given the matter considerable study; that again at a later date you prepared a complaint and filed the same and had summons issued; that still later you prepared a lis pendens and filed the same; that you attempted to get service of the summons at the residence of the defendant, some five or six miles from town, and later did obtain summons on two of the defendants and the wife of one; went to see Leo Hersch to find out whether or not he had filed involuntary bankruptcy proceedings against the defendant; had practically daily consultations with the plaintiff between January the 25th. to the following February 28th. concerning the case; subsequently examined the abstract of title to the property involved, examined and passed upon two mortgages which had been prepared by the counsel for defendant; spent a whole day ascertaining the correct description of the property to be included in the new mortgage; what, in your opinion, considering the premises, would be a reasonable attorney's fee?"

The question itself answers this contention. All the services enumerated were either in preparing and filing the complaint, procuring service of summons, etc., or in perfecting a settlement of the litigation. For all these services Dockwiller was liable to Davies, and he could recover the reasonable value of the same from Williams.

But assuming the evidence as to the preparation of the brief, the release of the contract of purchase and the two mortgages, to have been incompetent, under the rule established in this jurisdiction, it will be presumed **2** that the court ultimately disregarded the testimony, unless it is apparent that the court considered the same in deciding the case.

In the case of Radcliffe vs. Chaves, 15 N. M. 258, Justice Pope stated the rule as follows:

"In cases tried before the court the erroneous admission of testimony will afford no ground for reversal unless it is apparent that the court considered such testimony in deciding the case. Lynch vs. Grayson, 5 N. M. 487, S. C. 163 U. S. 468."

See also Rehling vs. Brainard, (Nev.) 144 Pac. 167; Smith vs. Scott, 51 Wash. 33, 98 Pac. 763; Alexander vs. Wellington, 44 Colo. 338, 98 Pac. 631.

In this case there is nothing to indicate that the court considered such testimony in determing the amount of recovery. The hypothetical questions propounded to the witnesses who testified as to the value of the services rendered by appellee's attorney as shown did not include any of the services rendered by said attorney for Kerlee. It may be argued that in examining the mortgages, executed by Williams and Kerlee to Dockwiller, for the $7,000, it was the duty of Davies, as Kerlee's attorney, to examine and pass upon the sufficiency of the same. But this assumption is erroneous, for, Davies when acting for Kerlee, owed no duty to Dockwiller. As Dockwiller's attorney, however, it was his duty to see that the mortgages securing the new notes for the $7,000, were in proper form and correctly described the real estate intended to be included therein.

3. Appellant contends that where a note provides for the payment of an attorney's fee in the event that the note is collected, the taking of a new note is not a collection within the provision. Assuming, without so deciding, that the above is a correct statement of the law, the principle has no application to this case. The note, upon which this suit was brought, provided for the payment of

a reasonable attorney's fee, "If suit be brought on this note or if attorneys are employed to collect the same." Under this provision appellee was entitled to recover from appellant the reasonable value of his attorney's services, where he has placed the note in the hands of an attorney for collection, upon default in the payment of the note, or other condition, provided appellee was liable therefor. Appellant cites the case of Davis vs. Cochran, 76 Miss. 439, 24 So. 168, but in this case the note only provided for the payment of the fee "if not paid at maturity and if collected by an attorney." This provision is quite different from that contained in the note in this case.

In the case of Moore, Admx. vs. Staser, et al., 6 Ind. App. 364, the court said:

"When a party executing a note containing an unconditional agreement to pay attorney's fees, whether the amount is a stated per cent. or undetermined, has failed to meet his obligation when due, and the payee, in good faith, and because he deems it necessary so to do in order to enforce collection, places the note in the hands of an attorney at law for collection, who renders professional services in and about the collection thereof, either by suit or otherwise, he must pay, in addition to the principal and interest, such reasonable attorney's fees as shall be sufficiently adequate to compensate him for the services rendered in order to discharge the obligation." ·

See also Morrison vs. Ornabaun, et al., 30 Mont. 111.

Where a provision in a note limits the amount of recovery to a stated sum, or a named percentage, of course there can be no recovery in excess of such sum or percentage, regardless of the amount the payee may be required to pay for the services rendered. But where a promissory note provides for the payment of a reasonable attorney's fee, if suit be brought on the note, or if attorney's are employed to collect the same, upon default in payment of the note, or other condition broken, and the note is placed in the hands of an attorney for collection, the payee of the note is entitled to recover from the payor such sum, or attorney's fees, as he has paid, or becomes liable to pay, to·the extent of the reasonable value

of such services whether the note is paid in cash, or a new note is executed in lieu of the past due obligation.

Finding no available error in the record, the case must be affirmed, and, IT IS SO ORDERED.

### DISSENTING OPINION.

HANNA, J.—I find it impossible to agree that the majority opinion in this case correctly states the law in holding that in cases tried before the court the erroneous admission of testimony will afford no ground for reversal, unless it is apparent that the court considered such testimony in deciding the case. Nor can I agree that the principle of law, even though correctly stated, is applicable to the facts in this case. My objection to the principle, as stated, is that it is not sufficiently clear that the application of the rule is not to be made in any case where evidence has been erroneously admitted, unless it plainly appears that such erroneous admission of evidence was harmless or without prejudice to the party complaining. The Territorial supreme court, in the case of Lynch vs. Grayson, 5 N. M. 487, upon which is based the ruling of the same court in the case of Radcliffe vs. Chaves, 15 N. M. 258, correctly stated the ruling as it is followed by those jurisdictions adhering thereto, and qualified the principle as I believe it should be qualified, if given force and effect. The court saying, in the case of Lynch vs. Grayson:

"And in a trial by a court the admission of incompetent evidence at a trial below is no cause for reversal if it could not possibly have prejudiced the other party."

When such condition appears, it may be presumed, perhaps, that the trial court did not consider the objectionable testimony in deciding the case, although such presumption might be seriously questioned. It has been said that no rule is better settled than that where error is shown injury is presumed, unless the contrary appears affirmatively, Hayne New Trial and Appeal, Sec. 287.

This is not the ground of my objection to the rule as enunciated, however, except in so far as it indicates that the rule is not based upon a presumption that the court

did not consider the inadmissable evidence, but rather that the true test of the rule is, whether or not the error complained of was harmless. I am aware that the grounds set out in the opinion may be so considered to indicate that in the opinion of the court the error was harmless, and the opinion would thereby qualify the rule, as I contend it should be qualified. But this does not make the statement of the principle less objectionable, as the qualification does not therein appear, and must be arrived at by considering the application of the principle to the facts of the case.

The authorities which I have examined upon this point, without exception, so far as I have found, deal with the admission of evidence where the question arose during the stress of the trial, and the trial judge was called upon to pass upon the question relating to the admission of evidence without time for reflection or study, and it subsequently developing that the court had erred for technical reasons, and that such error was not prejudicial, the appellate court has, in effect, said that the evidence could not be considered because inadmissible, but the party complaining not having been harmed by its admission, the verdict or judgment would not be disturbed.

As stated in 2 R. C. L., Sec. 205, at page 250, where a large number of these cases are quoted in a note to the text:

"The broadness of the statement of the harmless error doctrine, however, necessarily leaves room for dispute about the prejudicial effect of a certain species of evidence, and no hard and fast rule can be laid down as to what errors can be deemed harmless."

It seems to me, however, that a sound test as to whether the admission of the evidence was in fact harmful, might rest upon the inquiry as to whether or not the objectionable evidence was given weight or taken into consideration in making findings or rendering judgment. Ordinarily, where the court had simply ruled on the admission of the objectionable evidence, in advance of its admission, it would be naturally presumed that the court had subsequently disregarded it. But in this case after the court

had ruled upon the objectionable evidence, and at the close of plaintiff's case, the defendant moved to strike such evidence, renewing his objections as set out when objection was urged to its admission. The court, upon consideration of this testimony, refused to strike the evidence. This would indicate that the court did consider the inadmissable evidence. The evidence in question, it is contended by appellant, went to show that some of the services rendered by the attorney for appellee had been actually rendered for co-defendants of Williams, and that therefore Williams was not liable for the services so rendered.

The question before us now, as was before the district court, is to determine whether the fee claimed by the attorney was a reasonable fee, for the services rendered, the burden being upon the attorney to prove such services, as well as the reasonableness of the fee. If it be true that the services rendered were performed for one of the co-defendants, the other defendant, appellant here, not being liable therefore, and such services have been taken into consideration in arriving at the amount of the judgment in this case, the evidence in question cannot be said to be harmless. This was not a case where all the evidence was simply cumulative, but is a case where all the evidence taken together upon the question of services performed, would necessarily be considered in making up the gross amount allowed and given as a judgment in the case, and therefore it cannot be said that it is not apparent that the court considered such testimony. Nor do I agree that the hypothetical questions propounded to the witness who testified as to the value of the services, did not include any of the services rendered by said attorney for the co-defendant, Kerlee.

It is my conclusion, after a careful examination of numerous authorities, and I think this is borne out by the opinion of the United States supreme court in the case of Grayson vs. Lynch, reported in 41 L. Ed. 230, that the real reason why the appellate court will not set aside the findings or the judgment and order a new trial for the admission of incompetent evidence, is that there is other competent evidence to support the conclusion arrived at, aside

from the question that the incompetent evidence was harmless, and I do not think that any case where the conditions existed should be sustained unless it does clearly appear that there is competent evidence to support the conclusion. This being true, the rule is not applicable, in my opinion, to the present case, because, as stated, this evidence with all the other evidence as to services must have been considered together, as making up the amount found by the trial court to be due the attorney for the services performed. It is not a question of whether the attorney was entitled to the fee allowed for performing the other services, outside of the services to Kerlee, on the ground that you can disregard this evidence because of other evidence remaining to prove that he was entitled to the same fee. All the evidence taken as a whole was found to justify the fee of $500, allowed, and if you are compelled to disregard the testimony as to a portion of the services, he loses his right to recover the amount of the judgment.

Some courts have gone so far as to hold that in cases of trial by the court without a jury, the admission of illegal evidence raises a presumption of injury, and requires a reversal of judgment, unless the remaining evidence is without conflict, and is sufficient to support the judgment without giving consideration to the objectionable evidence. First National Bank, Talladego vs. Chaffin, 118 Ala. 246, 24 So. 80; Miller vs. Mayer, 124 Ala. 434; 26 So. 892.

Other cases to the same effect could be cited, but it is unnecessary and unimportant to do so.

In this case the remaining evidence is not without conflict, and in my opinion, is not sufficient to support the judgment, although my principal objection to the rule as announced by this court, is upon the other grounds stated.

The evidence in this record discloses that the attorney prepared and filed a complaint, held frequent conferences with appellee relative to the suit, made certain interested parties defendant, and investigated the records in the recorder's office for the purpose of determining other liens that might exist, briefed some legal questions likely to arise on the trial of the case, examined certain mortgages and notes prepared by other attorneys after the case had

been settled by the parties, and contended that these serv-
ices were worth $1,000.00, and upwards, and has been
given a judgment for $500.00, which in my opinon, is
clearly excessive in view of all the circumstances of the
case as disclosed by the record, and is so clearly so as to
closely approximate oppression and justify the reversal of
the judgment, which, in my opinion, is the disposition that
should be made of this case.