506 P.2d 775

Carl GILLESPIE, Jr., Plaintiff-Appellee,

v.

Patricia GILLESPIE, Defendant-Appellant.

No. 9479.

Supreme Court of New Mexico.

Feb. 23, 1973.

**620**

Gallagher & Ruud, Albuquerque, for defendant-appellant.

Threet, Threet, Glass, King & Maxwell, Martin E. Threet, Albuquerque, for plaintiff-appellee.

## OPINION

STEPHENSON, Justice.

Defendant-Appellant ("wife") appeals from the judgment of the Bernalillo County District Court in this divorce proceeding.

The parties were married on December 23, 1952 and the trial court's decision and judgment were entered in November, 1971. The trial court was confronted with the array of controverted issues normal to divorce actions. In this appeal we are asked to review only the decision in respect to a separately owned business of husband and its value.

Prior to the marriage husband, by purchase, became an equal partner in a business which sold tile at wholesale and retail and contracted tile jobs. Husband's initial investment was five thousand dollars, portions of which were borrowed.

As to the business, the trial court found that the purchase money used in husband's acquisition of an interest had been borrowed and repaid prior to marriage; that at the time of marriage, husband's investment was $13,768.52; and that no community property was invested in the business except in respect to a car. As to the car, the court found that husband had a car prior to marriage and that after successive trades its descendent was contributed to the capital of the tile company. The court found that the value of the contributed car was $1,359.40 "in which the community had a minimal interest, if any."

Further as to the business, the court found that during the marriage husband's withdrawals from it equaled the value of his services and personal efforts in its conduct; that the value of the business was $52,470.75 of which $48,344.20 represented husband's separate interest and $4,126.55 was the community interest in undistributed profits.

The court then made disposition of the asset in a manner consistent with its findings.

The correctness of the trial court's decision must be gauged by § 57-3-5, N.M.S.A.1953 providing, inter alia, that property owned by a husband before marriage, with the rents, issues and profits thereof is his separate property; § 57-4-1, N.M.S.A.1953 providing that all other property acquired during marriage is community, and our root cases on the subject, notably Katson v. Katson, 43 N.M. 214, 89 P.2d 524 (1939) and Laughlin v. Laughlin, 49 N.M. 20, 155 P.2d 1010 (1944).

A good deal is said in the briefs of the need to see to it that in situations such as this the community and the wife be fairly and equitably treated. We are aware of this. We are however no less concerned with according the same sort of treatment to the husband's rights and his separate property which are just as sacred as is the right of the parties in their community property. Katson v. Katson, supra.

Wife first questions the trial court's finding to the effect that prior to marriage, husband had borrowed and repaid certain monies used to purchase his interest in the tile business. There is not the slightest question but that the business was acquired before marriage. Wife argues however that the borrowings with which it was acquired were not repaid prior to marriage but were rather, to some unspecified extent, repaid during coverture or in some

cases, were not repaid at all. From this she claims that the community had "an investment" in the business.

It would be a sufficient answer to this to say that the trial court's finding was richly sustained by the evidence and is not attacked in any case, were it not for the fact that in making this argument wife ignores a settled principle of law which has a direct bearing on the resolution of other issues. Since the husband's interest in the business was acquired prior to coverture, it was his separate property, regardless of whether payment was made for it before or after coverture. As we said in Laughlin v. Laughlin, supra:

"Property acquired in community property states takes its status as community or separate property at the very time it is acquired, and is fixed by the manner of its acquisition. (Citations omitted.)"

See also, Hollingsworth v. Hicks, 57 N.M. 336, 258 P.2d 724 (1953).

The business was the separate property of husband and remains so unless it was in some fashion transmuted. McDonald v. Lambert, 43 N.M. 27, 85 P.2d 78, 120 A.L.R. 250 (1938). The transmutation feature is not present here.

Thus even if some portion of the purchase monies for the interest in the partnership had been paid during coverture, the community would have had no "investment" in the business as contended by wife. The community would have merely had an equitable lien or charge against it.

Whether or not the pre-coverture borrowings were repaid is of no consequence absent some further transactions with the creditors, of which there is no evidence. Such borrowings would be the separate obligations of the husband.

We will accordingly proceed upon the basis that the interest in the tile company partnership was the separate property of the husband and we are not concerned with any equitable liens or charges of the community upon the business.

The trial court found that husband's investment in the tile company amounted to $13,768.52 at the time of the marriage. The parties were married on December 23, 1952 and the source of the figure mentioned was a financial statement kept in the ordinary course of business as of January 31, 1953. The nature of wife's quarrel with this figure is not entirely clear except that she points to the time interval between the marriage and the financial statement and argues that the finding was improper. There is no evidence of any material change in the financial affairs of the partnership during the interval. We are not prepared to hold as a matter of law that a bridegroom must pause in the tender turmoil of the nuptials to cast up his accounts. The time interval between the marriage and the statement is about the same as that which was approved in Katson. We find no legal objection to the court's finding and it is sustained by substantial evidence.

Wife next argues that husband's capital investment in the business at the time of the marriage, whatever it may have been, was of "no active use," of "no impact whatsoever" and "was absolutely insignificant" playing no part in the increased worth of the business, and that no increase of such worth attributable to that capital should be taken into account. Capital may find its way into inventories, material obtained with which to perform contracts, tools, equipment or the working capital necessary to carry out the performance of contracts. It is obvious that the business could not have existed or functioned without capital. Wife seems to argue that capital is not used or useful in the operation of a business in a capitalistic economic system.

The trial court found that the value of husband's investment had increased to $48,344.20 representing the rents, issues and profit of his separate estate together with his original investment. This figure was determined upon a computation predicated upon a rate of return equal to the

prime rate prevailing during the marriage plus two percentage points. The theory of the testimony was that had the business capital been borrowed, such would have been the rate required to be paid. Use of the formula was based upon expert testimony. The "prime rate" is the minimum interest rate charged by banks on business loans made to the most credit worthy entities.

Wife argues that the one issue is whether the community interest in husband's business was properly evaluated as a matter of law. She does not seem to claim an absence of substantial evidence.

Wife refers to the trial court's determination of the value of husband's separate estate as being "an enormous award." She states that during the marriage the average yield on government bonds was 4.07% whereas the average rate during that period applied by the court was 6.84%. Presumably this is intended to shock us. It doesn't. It only indicates that the government's credit is better than husband's, notwithstanding that the latter operated at a profit and the former seems to encounter some difficulty in breaking even. It does not seem inherently unreasonable for the court to have determined that husband would have had to pay two percentage points more on borrowings than, for example, General Motors Corporation. Tying the rate of return to the prime rate also has the virtue of taking into account the fact that the cost of money fluctuates as does the cost of other commodities. It is basically unrealistic to apply a flat rate of interest over a long period of time such as nineteen years, the duration of the marriage here, if the reasonable return is to be tied to an interest rate at all.

This is an "if" of some consequence. The trial court here was guided by the measure announced in some of our cases such as Jones v. Jones, 67 N.M. 415, 356 P.2d 231 (1960) of "usual interest on a long investment well secured." This standard is certainly conservative. Why a capital investment in a small business should be deemed "well secured" is not readily apparent. The mortality rates of small businesses indicates they are risky ventures. An equity investment is not secured in any case. We doubt that a prudent investor would have invested in the tile company for an anticipated return on equity of no more than 6.84%. In view of the disposition we make of this case, we need not consider this standard further.

■ It is impossible to lay down hard and fast guidelines in apportioning assets between the separate estate of a conjugal partner and the community. The surrounding circumstances must be carefully considered and the ultimate answer calls into play the nicest and most profound judgment of the trial court. As was said in Laughlin:

> "Each case will depend upon its own facts; a situation often encountered by trial courts. Mathematical exactness is not expected or required, but substantial justice can be accomplished by the exercise of reason and judgment in all such cases."

■ By what we have said, we do not wish to be understood as approving use of the prime rate, or in fact any interest rate, as a rule of thumb in all cases. It is easy to conceive of a separate business in which all of the profits and increase stemmed from a prudent investment or business arrangement made prior to coverture so that the community would have no interest in it at all. It is equally easy to visualize the converse situation in which all of the profits and increase stem from the labor and skill of a conjugal partner and hence belong to the community. We are considering a fact situation in which there were substantial withdrawals and increases in the value of the business, and taking into account all of the circumstances, we see no error in the manner in which the apportionment was made by the trial court.

■ We approve the statement by de Funiak in his Principles of Community

Property, Section 72, quoted with approval in Laughlin to the effect that:

"'* * * each · case must be determined with reference to its surrounding facts and circumstances and that therefrom must be determined what amount of the income is due to personal efforts of the spouses and what is attributable to the separate property employed. Dependent upon the nature of the business and the risks involved, it must be reckoned what would be a fair return on the capital investment as well as determined what would be a fair allowance for the personal services rendered.' "

In the words of Mr. Justice McGhee, speaking for the court in Campbell v. Campbell, 62 N.M. 330, 310 P.2d 266 (1957) a proper apportionment "depends on what is best under all the proof."

■■ We reach the same result by another route which we will mention because of its significance in respect to other limbs of the case. Katson and Laughlin deal with the classification and apportionment of property as separate or community in situations where labor, industry and skill of the husband (community property) is expended on separate property or in a separate business. It is clear from the construction placed on §§ 57–3–5 and 57–4–1 by those cases that there must be a fair apportionment between the return on the separate property or on capital invested in a separate business, which goes to the owner of it, and the value of the labor, industry and skill of the husband which belongs to the community. The entire income, here partly in the form of withdrawals and partly in the form of increased value of the business, must be taken into account. In order to have proper appellate review the trial court should make findings as to both the value of the separate property and the value of the community property as was done here. However issues in the same case may well be formulated differently upon trial than on appeal. In this case the trial court found:

"During the period of the marriage, plaintiff's withdrawals from Crest Tile Company amounted to $250,750.09, which amount represents the reasonable value of the services and personal efforts in the conduct of the business during the marriage."

In Katson on this subject we said:

"In the absence of other definite proof of the value of appellant's services to the partnership and corporation, the salary he was paid is assumed to be their value."

It was there held that the amount of the withdrawals was substantial evidence of the value of the services, absent evidence on the subject. The same would probably be true here but we are spared the necessity of deciding this because the last quoted finding is not attacked. We must therefore accept it as true and established. Horton v. Driver-Miller Plumbing, Inc., 76 N.M. 242, 414 P.2d 219 (1966); Hindi v. Smith, 73 N.M. 335, 388 P.2d 60 (1963).

If the value of the husband's services and personal efforts is in an established amount, what more could the community be entitled to? Wife attacks the court's findings as to the value of the business which were predicated upon the books of account, claiming that no going concern value was taken into account. This argument relies heavily on accounting texts and the like cited as precedent, but the query arises as to what difference it could make, so long as the correct amount was taken into account for the reasonable value of the husband's services and efforts. Suppose the business was worth twice as much. We have already established that the business was husband's separate property.

■ Similarly wife argues that unreasonable amounts of cash were retained in the business, thereby depriving her of some interest in them because they didn't come out of the business. If the cash was separate property in the business, it would have

remained so had it been withdrawn, so long as the value of his services and personal effort was established and properly taken into account.

There is certain minor confusion in the trial court's findings in that after finding the value of the husband's services and personal efforts and the accumulated value of his separate and community interests in the tile company, it then found that of the latter amount $4,126.55 was the community interest in the undistributed profits of the business. With the value of the services and efforts being established and not challenged, and all of those monies having been withdrawn from the business, it is difficult to see how there could have been a community interest still in the business. Wife, with admirable grace says "the inconsistency, if there be any, should be ignored". Husband does not cross-appeal. Wife points out that the evidence indicates that the business earned money between the date of the balance sheet from which the figures were determined, July 31, 1971, and the date of the hearing September 15, 1971. Doubtless the court had this in mind in determining that $4,126.55 of community interest remained in undistributed profits.

■ Finally wife complains of the court's action concerning the automobile contributed to capital of the tile company of which we spoke near the outset. There are no figures from which an apportionment could be made. It was established that the first car was the separate property of husband. In making such apportionments Laughlin says that "[m]athematical certainty is not required" and Conley v. Quinn, 66 N.M. 242, 346 P.2d 1030 (1959) holds that where there is a commingling of a negligible amount of community property with a large amount of separate property so that the separate property can no longer be identified, we will not blindly follow the rule that it is thereupon presumed to be community. We find no error in the court's decision concerning the automobile contributed to the tile company capital.

Wife is allowed five hundred dollars for services of her attorney in this appeal.

The judgment will be affirmed.

It is so ordered.

MONTOYA and MARTINEZ, JJ., concur.