551 P.2d 638

**Judith M. MICHELSON, Plaintiff-Appellee and Cross-Appellant,**

v.

**Jack T. MICHELSON, Defendant-Appellant and Cross-Appellee.**

**No. 10144.**

Supreme Court of New Mexico.

June 22, 1976.

Sutin, Thayer & Browne, Irwin S. Moise, Norman S. Thayer, Albuquerque, for appellant.

Botts & Cole, Gerald R. Cole, Albuquerque, for appellee.

OPINION

MONTOYA, Justice.

This is the second appeal involving this case. In disposing of the first appeal, *Michelson v. Michelson,* 86 N.M. 107, 520

P.2d 263 (1974), we reversed and remanded for the entry of proper findings of fact and conclusions of law relative to the distribution of the community property between the parties, the award of alimony, the award of attorney's fees, and the accrual of interest on the sums awarded.

Upon remand, the trial court entered amended findings and conclusions determining the exact amount of the community interest of the plaintiff (wife) in the sum of $148,172.30, then subtracting it from $200,000 to arrive at a figure of $51,827.70, which it decreed to be lump sum alimony. It also awarded $26,000 to the wife for her attorney's fees in the trial court.

The defendant (husband) appeals from this second decision after remand, contending the trial court erred in failing to conclude that the husband's interest in Sunbell Corporation (Sunbell) was separate property, and that the compensation paid to the husband by Sunbell was equal to the reasonable value of services of the husband. The husband also alleges error by the trial court in finding and concluding, without supporting evidence, that 7% of the increase of the value of the husband's interest in Sunbell was attributable to the husband's labor, industry and skill, that the wife was entitled to a community share therein, and that the amount of growth and total profits of Sunbell between certain dates was $3,246,092.

The husband further alleges that the trial court committed error as to its determination, without supporting evidence, that the wife had a community interest in the residence of the parties, in concluding that it had no jurisdiction to alter the $200,000 amount awarded at the first trial to the wife as her share of the community, or as lump sum alimony. The husband, in addition, alleges error in the conclusion that the lump sum alimony award should be the difference between the trial court's determination of the value of the community property awarded to the wife and the sum of $200,000. The husband also alleges that the trial court abused its discretion in awarding lump sum alimony under the uncontradicted facts.

The wife takes issue with the husband's contentions, claiming no error was committed by the trial court and cross-appeals, contending the court erred in failing to provide interest on the award from June 1, 1973. The wife also asks for review under Rule 3(b), Rules of Appellate Procedure [§ 21–12–3(b), N.M.S.A., 1953 (Repl.Vol. 4, 1975 Supp.)], in the event the court finds error in the trial court's decision and seeks additional attorney's fees for services in connection with the appeals.

We will first consider the effect of the decision and amended mandate of this court made after the first appeal. This court reversed the judgment and, in its opinion, clearly stated it could not adequately review the trial court's decision because it did not allocate which portion of the $200,000 judgment awarded to the wife was community property and which portion was alimony. We did not intend to affirm the award of $200,000. We remanded the cause for the entry of appropriate findings and conclusions so that an adequate review could be made. Again, we reiterate what we stated in our previous opinion, involving the issues between the parties (86 N.M. at 111, 520 P.2d at 267):

> "In *Mora v. Martinez*, 80 N.M. 88, 90, 451 P.2d 992, 994 (1969), we quoted with approval from *Featherstone v. Barash*, 345 F.2d 246, 249 (10th Cir. 1965), and said:
>
> > " ' " * * *. And when findings wholly fail to resolve in any meaningful way the basic issues of fact in dispute, they become clearly insufficient to permit the reviewing court to decide the case at all, except to remand it for proper findings by the trial court." ' "

What were the basic issues of fact in dispute? Clearly they were the extent and division of the community property, the

award of alimony and attorney's fees. As to the award of alimony, we made it clear that an important factor in determining the amount of the award would be the amount of property distributed to the wife as her share of the community interest. We did not rule on the correctness or incorrectness of the total award of $200,000 which the trial court labeled as alimony, but which undoubtedly was intended by its decision to include the wife's interest or share of community property.

◼ Accordingly, we hold that the trial court committed error in ruling that it was bound to make the award in the same amount and apportion that figure into what it found to be community property, and what it found to be proper award of alimony. If we could not make a determination of the correctness of the trial court's decision as to the amount of alimony, or the amount of community property, it follows that the $200,000 figure was not affirmed.

We now consider the other rulings as made by the trial court after remand. The parties agreed, both before the trial court and at oral argument on the second appeal, that the Rushfair property in Texas was no longer an issue in the case, and that the community under the laws of Texas was entitled to the rents, issues and profits from the separate property of the husband. It was agreed at oral argument that the community property interest was $42,977.73 received from rentals. Although it is true that the said rentals were never distributed, each of the parties herein would be entitled to an equal share of the rentals.

◼ Another contention involved in this appeal is the decision of the trial court regarding the interest of the parties in Sunbell. The findings made by the trial court pursuant to remand, which are challenged by the husband, are as follows:

"8. As of January 1, 1973, the net value of the assets of the husband was approximately $496,030.00, plus the value of the parties' interest in Sunbell Corporation of approximately $1,297,796.00, plus the value

of interest in Rushfair Shopping Center of approximately $99,000.00, for a total net value of $1,892,826.00.

"10. Seven (7%) percent of the growth and profits of Sunbell Corporation is attributed to the labor, industry and skill of defendant. Seven (7%) percent of such growth and profits is $227,226.44.

"12. The total net increase in the value of this interest in Sunbell Corporation from date of defendant's return in June, 1964, to September 30, 1972, was $1,181,296.00."

The husband also contends that the trial court erred in failing to conclude on the basis of uncontradicted facts the following:

"1. That all the interest of the defendant in Sunbell was separate property; and

"2. That the compensation paid defendant by Sunbell was at all times equal to the reasonable value of those services to the community."

The husband further contends that the trial court erred in deciding without evidence to support it that:

"10. Seven (7%) percent of the growth and profits of Sunbell Corporation is attributed to the labor, industry and skill of defendant. Seven (7%) percent of such growth and profits is $227,226.44.

"13. Total value of Sunbell on July 1, 1964, was $349,500.00 Total value of Sunbell on September 1, [1972], was $2,595,-592. Sunbell paid no dividends during the period 1960 to 1972, but $1,000,000 was withdrawn to retire the stock of Douglas Michelson. Total growth and profits of Sunbell for the period July 1, 1964, to September 20, 1972, was $3,246,092.00."

From the foregoing findings, the court then mathematically ascertained that seven percent of the growth and profits was $227,226.44 and divided it equally to arrive at the wife's community interest, which it ascertained to be $113,613.44. The husband asserts that the trial court's figures are erroneous, particularly finding No. 13 where the value of Sunbell was found to have increased from a value of $349,500 on

July 1, 1964, to $2,595,592 on September 20, 1972. Then, to the difference between the figures representing the growth and profits, the trial court added $1,000,000 which was "withdrawn" to retire the stock of Douglas Michelson (who was a one-third owner of the business), to arrive at a total of growth and profits for the period mentioned calculated at $3,246,092. The record reveals that $1,000,000 was borrowed by the corporation to purchase the Douglas Michelson stock. It further shows that the husband is now the owner of one-half interest in Sunbell.

The husband contends that the total growth and profits have been overvalued by $1,000,000 and we are inclined to agree. But the error of the trial court's calculation is compounded by the use of the seven percent figure as the percentage of growth attributable as the husband's contribution to the total growth of Sunbell. Both parties at oral argument agreed that the seven percent figure was picked out of the blue or out of the air and, accordingly, we hold that there is no substantial evidence to support the application of such a percentage to arrive at the trial court's conclusion.

The foregoing contentions, as to growth and profits of Sunbell, become academic if the court erred in holding that the interest of the husband in Sunbell was not separate property. The husband argues that the principles enunciated in *Katson v. Katson,* 43 N.M. 214, 89 P.2d 524 (1939), and *Gillespie v. Gillespie,* 84 N.M. 618, 506 P.2d 775 (1973), require a conclusion that the community had no interest in the growth and profits of Sunbell. The facts in *Katson,* supra, are somewhat analogous. There, the husband owned a one-half interest in a restaurant business prior to the marriage, and the husband was paid a salary. The business had two partners and a small number of employees. In the *Katson* case, supra, the partnership was later dissolved and a corporation formed, each of the former partners owning one-half of the stock. In reversing the trial court which awarded the divorced wife one-half of the property in the husband's name, this court stated as follows (43 N.M. at 216–217, 89 P.2d at 525–526):

"We start with the finding of the court that appellant was the owner of a half-interest in the Court Cafe at the time he married appellee. This therefore was his separate property; and the rents, issues and profits thereof were his separate property. Appellant's right in his separate property is just as sacred as is the right of the parties in their community property. *State v. Sailors,* 180 Wash. 269, 39 P.2d 397.

"The burden of proof was upon the appellant to establish his separate title. But when its separate character was established, it maintains that character until the contrary has been made to appear by direct and positive evidence. *Guye v. Guye,* 63 Wash. 340, 115 P. 731, 37 L.R.A. N.S., 186; *Jacobs v. Hoitt,* et ux., 119 Wash. 283, 205 P. 414.

"The only finding of the court upon which his decree could be justified is No. XII, a part of which is as follows: ' "The property, both before and after the change to a corporation, was intermingled with the fruits of the community effort so that its identity was lost and could not be traced and identified as a separate property or estate of plaintiff." '

"This finding is bottomed upon the fact that appellant was the manager of the partnership and corporation; and that the community was entitled to the value of appellant's services and talent, and that they went into the business and thus became so commingled with appellant's separate property that the two cannot be separated. The finding that there was such commingling of property is challenged.

"It is true, that the community owns the earning power of the husband, and that when it is used in the conduct of his separate business, the portion of the earnings attributable to his personal activities and talent is community property. *In re Caswell's Estate,* 105 Cal.App.

475, 288 P. 102. But it does not necessarily follow that the classes of property cannot be separated under well recognized principals of law. *Shea v. Commissioner of Internal Revenue*, 9 Cir., 81 F.2d 937; *Van Camp v. Van Camp*, 53 Cal.App. 17, 199 P. 885; *Pereira v. Pereira*, 156 Cal. 1, 103 P. 488, 23 L.R.A., N.S., 880, 134 Am.St.Rep. 107.

"It was contemplated by the statute which provided that the rents, issues and profits from the separate estates of the spouses should be separate property (N. M.Sts.1929, § 68–303); that separate property should have the direction of the owner; and it could not have been intended that its owner must employ a manager to avoid its loss to the community. The question has been before the California courts a number of times, and satisfactory answers given.

"If the appellant had desired, he could have employed a manager, in which case the entire proceeds from the operation of the cafe would have been his separate property. If no other means of proving the value of services is available, then the wages ordinarily paid for like services may be proven; or as held by some courts, the owner is entitled to at least legal interest on the money invested. *Pereira v. Pereira*, supra; *In re McCarthy's Estate*, 127 Cal.App. 80, 15 P.2d 223. While it is contended that a large part of the income was attributable to the skillful management of appellant, no attempt was made to prove his worth to the business.

"As the property was never wholly owned by him, and he was paid definite salaries for his services, in the absence of definite evidence of their value, it will be presumed that the salary paid was the value of the services. This is the rule of the California courts."

In *Gillespie v. Gillespie*, supra, we said (84 N.M. at 622–623, 506 P.2d at 779–780):

"It is impossible to lay down hard and fast guidelines in apportioning assets between the separate estate of a conjugal partner and the community. The surrounding circumstances must be carefully considered and the ultimate answer calls into play the nicest and most profound judgment of the trial court. As was said in [*Laughlin v.*] *Laughlin* [49 N.M. 20, 35, 155 P.2d 1010, 1019]:

'"Each case will depend upon its own facts; a situation often encountered by trial courts. Mathematical exactness is not expected or required, but substantial justice can be accomplished by the exercise of reason and judgment in all such cases."'

"* * *.

"We approve the statement by de Funiak in his Principles of Community Property, Section 72, quoted with approval in *Laughlin* to the effect that [49 N.M. at 30, 155 P.2d at 1016]:

'"'* * * each case must be determined with reference to its surrounding facts and circumstances and that therefrom must be determined what amount of the income is due to personal efforts of the spouses and what is attributable to the separate property employed. Dependent upon the nature of the business and the risks involved, it must be reckoned what would be a fair return on the capital investment as well as determined what would be a fair allowance for the personal services rendered.'"'

In the words of Mr. Justice McGhee, speaking for the court in *Campbell v. Campbell*, 62 N.M. 330, 310 P.2d 266 (1957) a proper apportionment 'depends on what is best under all the proof.'"

In examining the record, we note that the husband was paid for his services to the corporation. There is no question that the husband contributed his share to the success and growth of the business for which he was paid a reasonable salary, which salary of course belonged to the community. The wife claims that the husband was not receiving the salary that his work

and contributions to the business demanded, but there is no proof in the record that the salary was not adequate or reasonable under the circumstances. The husband's annual salary, when he returned from college, started at $7,500 in 1964 and had been increased to $35,000 in 1972.

Under the *Katson* decision, supra, which we have consistently followed, we have no choice but to hold that the trial court erred in concluding that the community had acquired an interest in Sunbell.

■ The next issue before us is the husband's claims of error on the part of the trial court in concluding that there was a community lien on the home of the parties due to the use of community credit and expenditure of time and money by the parties on the said home. The pertinent findings of the trial court are as follows:

"16. The home of the parties was built in 1966. The only separate funds of defendant used in the home was the $14,000 paid for the lot upon which the home is constructed. The value of the home exceeds the original land price and the mortgage balance by $32,440.00. Fifty (50%) percent of this value is attributable to the community expenditures of time, effort and money and the other fifty (50%) percent is attributable to the normal appreciation of property. The community has a lien against the home in the amount of $16,220.00.

"17. The parties jointly participated in the designing, furnishing, decorating and landscaping of the home, and in the maintenance and improvement thereof.

"18. The present balance on the mortgage is $53,560.00.

"19. The present value of the residence is approximately $100,000.00. Husband desires that the home be awarded to him, and wife does not object."

Based on the above quoted findings, the trial court concluded:

"5. The community has a lien against said home in the amount of $16,220.00 and wife should receive $8,110.00 as her share of such lien."

There is no question but that the home or residence was the separate property of the husband. In *McElyea v. McElyea*, 49 N.M. 322, 325, 163 P.2d 635, 637 (1945), it was held:

"* * * [P]roperty acquired in New Mexico takes its status as community or separate property at the time and by the manner of its acquisition; and if a part of the purchase money is later paid by other funds than those of the owner of the property, whether of the community or an individual spouse, the owner is indebted to the source of such funds in that amount, but such payment does not effect the title of the purchaser."

In the instant case, there is evidence that the parties expended some $35,500 on the home after its completion. The evidence is not clear as to whether community or separate funds were used for that purpose. There is evidence that a few mortgage payments were made from community funds. The refinancing of the mortgage on the home was accomplished by a note and mortgage signed by both the husband and wife. It would appear that the community credit was pledged thereby. The parties expended considerable time and effort in making improvements. There was no attempt to trace the separate funds of the husband into the expenditure of $35,500 for the home after completion, and the trial court's conclusion that the community has a lien of $16,220 against the home will not be disturbed. See *Laughlin v. Laughlin*, 49 N.M. 20, 155 P.2d 1010 (1945); *McElyea v. McElyea,* supra. The parties agreed that if a community lien was found to exist against the home, the wife's interest would be $8,110. The findings and conclusions of the trial court, with respect to the wife's lien against the home, are supported by substantial evidence and are, therefore, affirmed.

■ The husband also claims the trial court abused its discretion in awarding

lump sum alimony under the uncontradicted facts. In the previous appeal, we said adequate review of the lump sum award of $200,000 as alimony was not possible, because obviously it was intended to include the wife's share of the community property. Upon remand, the trial court allocated $148,172.30 as the wife's share of the community property and $51,827.70 as a single sum alimony award and in lieu of support. Since, in this opinion, we have reduced the amount of the wife's share in the community property and have stated that we did not affirm the $200,000 award previously made, we feel that we cannot properly decide the question of what would be a proper award. That is a matter which the trial court, in its discretion, can determine. In our previous opinion in the instant case, we listed some of the important factors to be considered in fixing the amount. Some consideration should be given to the impending remarriage of the wife, bearing in mind that alimony is intended as a method of fulfilling the husband's obligation to provide the support needed by the wife in accordance with the husband's ability to pay. We can only leave the matter to the trial court's wise discretion.

■ The last contention raised concerns the trial court's award of attorney's fees. The original award, after the first trial, was $25,000. Upon remand the trial court awarded an additional $1,000 for a total of $26,000, which the husband was ordered to pay. The pertinent finding covering this issue made by the trial court is as follows:

"38. Plaintiff's attorneys submitted timecards showing approximately 400 hours spent in research, discovery conferences and preparation for trial; the trial of this matter consumed two full days, the second day not ending until 9:30 P.M.; a trial brief of approximately 50 pages was submitted by plaintiff's attorneys; oral arguments were heard subsequent to the trial and lasted approximately three hours; requested findings of fact and conclusions of law were prepared, and a form of judgment prepared and submitted."

The trial court also made the following conclusions of law:

"9. Husband should pay wife $25,000 as compensation for and for payment to her attorneys for their services rendered herein.

"10. Husband should pay wife $1,000.00 as compensation for and for payment to her attorneys for their services rendered after remand.

"11. The Trial Court is without jurisdiction to award plaintiff moneys to pay her attorneys for their services on the appeal, such award being outside the amended mandate of the Supreme Court."

The proper rule or standard to be applied in reviewing awards for attorney's fees was stated in *Elsea v. Broome Furniture Co.,* 47 N.M. 356, 376, 143 P.2d 572, 584 (1943), as follows:

" * * *. A fee fixed by the trial court on the basis of reasonable compensation is a finding not to be disturbed unless patently erroneous as reflecting an abuse of discretion.

"Were this a case wherein our own discretion were to be invoked in the first instance we might say that at least some members of the court would be inclined to hold the fee so fixed to be excessive; but we are governed by the rule which permits us to disturb the exercise of the trial court's discretion in such matter only upon a clear showing of abuse thereof. The reasons which would call for a disturbance of the amount so fixed by a trial court must be very persuasive. *Merrick v. Deering et al.,* 30 N.M. 431, 236 P. 735; *Williams v. Dockwiller,* 19 N.M. 623, 145 P. 475. Cf. *Independent Steel & Wire Co. v. New Mexico Cent. R. Co.,* 25 N.M. 160, 178 P. 842. Many considerations enter into the matter of fixing attorney fees, not the least important of which are: the

ability, standing, skill and experience of the attorney; the nature and character of the controversy; the amount involved, the importance of the litigation and the benefits derived therefrom. Thornton on Attorneys at Law, § 449 (referred to with approval in *Williams v. Dockwiller,* supra). We observed also in the case last cited that the trial court which fixes the fee supposedly has a superior knowledge of the actual services rendered and the charges usually prevailing in the particular locality for such services. We must, therefore, decline to disturb the fee so fixed by the trial court."

Accordingly, in view of the findings and our inclination not to interfere with the exercise of discretion, absent a clear showing of abuse thereof, we affirm the ruling of the trial court on its award of attorney's fees.

■ The wife seeks an award of attorney's fees for services of her attorneys on this and the previous appeal, and some award should be allowed. Attorney's fees in the amount of $3,000 are hereby fixed and allowed for and on account of this and the previous appeal.

Accordingly, the cause is reversed in part and remanded to the trial court for entry of its decision and judgment in conformity with the views herein expressed.

IT IS SO ORDERED.

McMANUS and STEPHENSON, JJ., concur.